25 F.3d 1055
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Aaron BURROWS, Plaintiff-Appellant,
v.
The CITY OF TULSA, Oklahoma, P.W. Calhoun, Defendants-Appellees,
and
D.H. Burr, J.L. Flippin, D.H. Shelby, Officer Wilcoxen,
Officer Bellamy, Defendants.
 No. 93-5087.
 United States Court of Appeals, Tenth Circuit.
 June 1, 1994.
 
 1
 Before BRORBY and EBEL, Circuit Judges, and KANE,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff appeals the district court's sua sponte entry of judgment as a matter of law in favor of the City of Tulsa (City) and Officer Calhoun after a hung jury resulted in a mistrial on plaintiff's civil rights claims. We review the district court's entry of judgment de novo. First Sec. Bank v. Taylor, 964 F.2d 1053, 1055 (10th Cir.1992). Based upon our review, we reverse the entry of judgment and remand for further proceedings consistent with this order and judgment.
 
 
 4
 Plaintiff, who was bitten by a police dog during the course of his arrest in May 1991, sued the City and the officers involved in his arrest alleging that the officers used excessive force in arresting him, in violation of plaintiff's Fourth Amendment and substantive due process rights, and that the City had been deliberately indifferent in providing inadequate training to its K-9 units. The case went to trial against the City, Officer Calhoun, who handled the dog that bit plaintiff, and Officer Burr, who was one of the arresting officers.
 
 
 5
 At the conclusion of plaintiff's evidence, Officers Burr and Calhoun moved pursuant to Fed.R.Civ.P. 50(a) for judgment as a matter of law. The court granted the motion of Officer Burr, but denied the motion of Officer Calhoun. In response to the court's inquiry, defense counsel stated that the City did not intend to make a motion for judgment as a matter of law.
 
 
 6
 After presenting only brief testimony from Officer Burr, the defense rested. Neither side presented any rebuttal evidence. Officer Calhoun then moved again for judgment as a matter of law, and the court again denied his motion. The City did not move for judgment in its favor at any time before the case was given to the jury for deliberation.
 
 
 7
 The court sent the case to the jury on plaintiff's claims against Officer Calhoun and the City. Although it deliberated at great length, the jury was not able to reach a unanimous verdict. The court ultimately declared a mistrial and dismissed the jury. Immediately after the jury left the courtroom, the court informed the parties that it had reconsidered the motion for judgment as a matter of law made at the conclusion of all the evidence, and was going to sustain the motion on behalf of both the City and Officer Calhoun.
 
 
 8
 We turn first to the propriety of entering judgment on behalf of Officer Calhoun. We note at the outset that the court may not have had authority to enter judgment as a matter of law in Officer Calhoun's favor in the absence of a timely Rule 50(b) motion by Officer Calhoun after the jury was dismissed. The Supreme Court has held that "in the absence of a motion for judgment notwithstanding the verdict made in the trial court within ten days after reception of a verdict the rule forbids the trial judge or an appellate court to enter such a judgment." Johnson v. New York, New Haven & Hartford R.R., 344 U.S. 48, 50 (1952); see also 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure 2537, at 604 (1971)("Judgment cannot be had as a matter of law, either after verdict or after a jury disagreement, in the absence of a motion for judgment.").
 
 
 9
 Despite this language, several circuit courts have held that when a party makes a proper motion pursuant to Rule 50(a) before the case is sent to the jury and the trial court expressly reserves ruling on that motion, then the trial court can enter judgment for that party subsequent to a contrary jury verdict without the party specifically making another motion under Rule 50(b), so long as the trial court acts within the time permitted for the filing of a Rule 50(b) motion and the opposing party still has an opportunity to request a new trial rather than the entry of judgment. E.g., Mosser v. Fruehauf Corp., 940 F.2d 77, 84 n. 2 (4th Cir.1991); Nichols Constr. Corp. v. Cessna Aircraft Co., 808 F.2d 340, 354-56 (5th Cir.1985); First Safe Deposit Nat'l Bank v. Western Union Tel. Co., 337 F.2d 743, 746 (1st Cir.1964); Shaw v. Edward Hines Lumber Co., 249 F.2d 434, 436-39 (7th Cir.1957); see also Norton v. Snapper Power Equip., 806 F.2d 1545, 1547-48 (11th Cir.1987)(finding no procedural impediment to trial court entering judgment in defendant's favor even though court had not expressly reserved ruling on defendant's earlier directed verdict motion and defendant did not move for judgment in its favor after jury returned contrary verdict).
 
 
 10
 We need not decide whether the district court had the authority to enter judgment as a matter of law in favor of Officer Calhoun on plaintiff's claim for excessive force despite Officer Calhoun's failure to move for judgment under Rule 50(b), because we conclude that judgment as a matter of law was not warranted on the merits. Rule 50(a) provides that a court may enter judgment as a matter of law on an issue when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."
 
 
 11
 In deciding whether to [enter judgment as a matter of law], the trial court must view the evidence most favorably to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. The court may not weigh the evidence or pass upon the witnesses' credibility, or substitute its judgment for that of the jury.
 
 
 12
 Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 498 (10th Cir.1984).
 
 
 13
 A claim that a law enforcement officer has used excessive force in the course of an arrest must be analyzed under the "reasonableness" standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. This inquiry must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and with "careful attention to the facts and circumstances of each particular case." Id. at 396.
 
 
 14
 Construing the evidence in the light most favorable to plaintiff, we conclude that the jury could have found that Officer Calhoun's actions were not objectively reasonable. The evidence showed that the City's police dogs are trained to find, bite, and hold suspects on command. Because the dogs are not capable of distinguishing defensive from aggressive movement, a suspect must remain perfectly still to avoid provoking the dog. So long as the dog perceives a threat, it will continue to bite and hold the suspect. Officer Calhoun testified that if his dog, Schafer, perceived that a suspect was fighting it--even if only defensively--Schafer would continue to bite the suspect and could not be called off by a voice command. Instead, Schafer would have to be physically removed by the officer using a leash.
 
 
 15
 On the evening of May9,1991, Officer Calhoun, Schafer, and numerous other police officers arrived at the home of plaintiff's sister to arrest plaintiff on several outstanding felony warrants for forgery, false impersonation, and check fraud. When plaintiff saw the police, he fled, and was pursued by Schafer and Officer Calhoun, who was in radio contact with a police helicopter on the scene. In the course of the pursuit, a neighbor ran out of his house and told Officer Calhoun that someone was at his back door trying to break in. Officer Calhoun and Schafer then went to the man's backyard, which was fenced, and stopped at the gate.
 
 
 16
 Plaintiff testified that he had run into the yard and begun knocking on the back door of what he believed to be a friend's house. In his panic, however, plaintiff had run too far and was at the home of someone else. Plaintiff testified that while he was standing on the back porch knocking on the door in an effort to rouse his friend, he saw Officer Calhoun and Schafer standing at the gate to the back yard. Plaintiff, who was illuminated by the porch light as well as the search light of the helicopter now hovering overhead, believed that Officer Calhoun had seen him and that the chase was over. He testified that he laid down spread eagle on the back porch and awaited Officer Calhoun's arrival.
 
 
 17
 Officer Calhoun testified that he looked into the yard but did not see plaintiff standing on the back porch. Without giving a warning that he would send in a dog if plaintiff did not surrender, Officer Calhoun put Schafer over the fence and set him free. Officer Calhoun watched Schafer enter the yard and run along the fence and then he himself climbed over the gate and into the yard. In the meantime, Schafer had located plaintiff lying on the porch. Without warning, Schafer bit plaintiff first in the buttocks, then in the head, and subsequently on the arm. Officer Calhoun, who had headed towards the back of the yard after he climbed the fence, was alerted to plaintiff's whereabouts when he saw plaintiff and Schafer rolling around on the back porch. Officer Calhoun had some difficulty getting a hold on Schafer, but was eventually able to pull him off of plaintiff.
 
 
 18
 Officer Calhoun then told plaintiff to stand up and put his hands on a nearby fence to be frisked. By this time, other officers had arrived in the backyard to assist in plaintiff's arrest. After plaintiff was handcuffed, he was told to turn around. Plaintiff testified that when he started to comply with the officers' direction, Schafer lunged forward and bit him again in the buttocks. Plaintiff testified that Schafer was not on his leash at the time. Officer Calhoun testified that he did not see Schafer bite plaintiff again. Assuming the bite did occur, Officer Calhoun said, it must have happened before plaintiff was handcuffed, while Schafer was on his leash at Officer Calhoun's side.[2]
 
 
 19
 Plaintiff's expert, a dog trainer who had once trained police dogs for the City, testified that under the circumstances, it was improper for Officer Calhoun to put Schafer over the fence and let him go without first warning plaintiff and giving him an opportunity to surrender. The jury could have found that Officer Calhoun's failure to warn plaintiff and his decision to put Schafer over the fence and let him go free while Officer Calhoun remained on the other side, knowing that if Schafer found plaintiff, he would attack and could not be called off with a voice command, were not objectively reasonable. Therefore, the jury could have concluded that the force used to effect plaintiff's arrest was unconstitutionally excessive. Because the jury could have found that Officer Calhoun used excessive force in arresting plaintiff, the district court should not have entered judgment as a matter of law in favor of Officer Calhoun pursuant to Rule 50.
 
 
 20
 We turn then to the district court's sua sponte entry of judgment in favor of the City. Rule 50(a) permits a party to move for judgment as a matter of law at any time before a case is submitted to a jury, and Rule 50(b) permits a party who has previously moved for judgment under Rule 50(a) to renew the motion within ten days after entry of judgment. The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original motion. See Anderson v. United Tel. Co., 933 F.2d 1500, 1503 (10th Cir.) (using the "directed verdict" and "judgment n.o.v." nomenclature of Rule 50 prior to its amendment in 1991), cert. denied, 112 S.Ct. 375 (1991). The provisions of Rule 50(a) and (b) serve two purposes: they " 'protect[ ] the Seventh Amendment right to trial by jury, and ensur[e] that the opposing party has enough notice of the alleged error to permit an attempt to cure it before resting.' " Id. (quoting FSLIC v. Reeves, 816 F.2d 130, 138 (4th Cir.1987)).
 
 
 21
 Because the City failed to move for judgment as a matter of law before the case was submitted to the jury, plaintiff was not given the notice and opportunity contemplated by Rule 50 to cure the evidentiary deficiencies in his case that the City now cites in support of its argument that judgment in its favor was proper. If we allowed the district court's sua sponte entry of judgment in favor of the City to stand, we would eviscerate the laudatory purposes of Rule 50 and permit plaintiff to be ambushed. Therefore, we must reverse the district court's sua sponte grant of judgment for the City and remand for further proceedings. See Federal Practice & Procedure 2537, at 598 ("[I]f the evidence was insufficient as a matter of law but no motion for directed verdict was made, the court cannot grant judgment notwithstanding the verdict....").
 
 
 22
 Because plaintiff's claims may be submitted to another jury on remand, we will address briefly his challenges to the jury instructions given by the trial court. Plaintiff first contends that the district court's instruction on the elements of an excessive force claim was erroneous because it required that plaintiff prove he suffered a "significant injury" as a result of Officer Calhoun's conduct to establish a Fourth Amendment violation. We agree.
 
 
 23
 The instruction the district court gave on the elements of an excessive force claim was based, in part, on our decisions in Meade v. Grubbs, 841 F.2d 1512 (10th Cir.1988), and Wise v. Bravo, 666 F.2d 1328 (10th Cir.1981), see Br. of Appellee at 17; App. Vol. I, Ex. 6, at 153-55, both of which predated Graham and analyzed the claims involved under the Fourteenth Amendment due process standard. Neither Meade nor Wise applies to a claim of excessive force governed by the Fourth Amendment. As the Seventh Circuit has explained,
 
 
 24
 [t]he Fourth Amendment protects against unreasonable seizures, not seizures that "shock the conscience" or cause "severe injuries." If, under the totality of circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights. The objectively unreasonable seizure itself (regardless of the officer's motive or whether any injury inflicted was severe) crosses the constitutional threshold.
 
 
 25
 Lester v. City of Chicago, 830 F.2d 706, 712 (7th Cir.1987).
 
 
 26
 Thus, in cases governed by the Fourth Amendment, courts have rejected jury instructions based on the objective and subjective factors of the substantive due process "shocks the conscience" standard, and have approved instructions that require the jury to consider the reasonableness of the force applied in light of the total circumstances. See, e.g., United States v. Reese, 2 F.3d 870, 883-85, 899 (9th Cir.1993), cert. denied, 114 S.Ct. 928 (1994); Stachniak v. Hayes, 989 F.2d 914, 922 (7th Cir.1993); Miller v. Lovett, 879 F.2d 1066, 1069-70 (2d Cir.1989). On remand, the district court should instruct the jury accordingly.
 
 
 27
 Plaintiff also challenges the district court's refusal to give several of plaintiff's requested instructions relating to his claim against the City for inadequate training and to his request for punitive damages. Plaintiff fails to explain why the court's refusal to give the instructions was error, and we see no error ourselves.
 
 
 28
 The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the case is REMANDED for further proceedings consistent with this order and judgment.
 
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 On appeal, plaintiff contends that whether the bite he allegedly received after he was in handcuffs was an unconstitutional use of excessive force is governed by the Fourteenth Amendment substantive due process standard, rather than by the Fourth Amendment standard. "The due process standard is more onerous than the Fourth Amendment reasonableness standard since the former requires, in addition to undue force, personal malice amounting to an abuse of official power sufficient to shock the conscience." Frohmader v. Wayne, 958 F.2d 1024, 1027 (10th Cir.1992)
 Although we have not clearly demarcated at what point an arrest ends and pretrial detention begins, in Butler v. City of Norman, 992 F.2d 1053, 1054-55 (10th Cir.1993), we held that the challenged conduct, which involved beating the plaintiff before and after he was handcuffed at the scene and later shoving him into a wall at the jail while still handcuffed, all occurred "during the course of the investigatory stop and arrest" of the plaintiff. Therefore, even if plaintiff were bitten after he was handcuffed, the bite would have occurred during the course of his arrest and would be governed by the Fourth Amendment reasonableness standard.