**Russell W. BRITSCHGE, Plaintiff,**

v.

**Ed HARMISON, Defendant.**

**No. 95–4186–SAC.**

United States District Court,
D. Kansas.

Nov. 14, 1996.

Russell W. Britschge, Lyndon, KS, pro se.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion for summary judgment (Dk. 27). Proceeding both *in forma pauperis* and *pro se*, the plaintiff Russell Britschge brings this civil rights suit pursuant to 42 U.S.C. § 1983. Britschge alleges the defendant Ed Harmison, while performing his duties as a part-time police officer for the City of Overbrook, committed an "act of police brutality" in violation of Britschge's constitutional rights under the Fourteenth Amendment. (Dk. 1). Britschge alleges Harmison arrested, handcuffed, and placed Britschge in the front seat of the patrol car and then "violently and viciously struck the plaintiff across the face with his hand causing the plaintiff extreme physical and mental pain" for which Britschge seeks $100,000 for actual damages and $100,000 in punitive damages. (Dk. 1).

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121

L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir.1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedu e "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## STATEMENT OF UNCONTROVERTED FACTS

The plaintiff did not controvert any of the facts which were stated in the defendant's motion for summary judgment. The court accepts those facts as uncontroverted for purposes of this motion.

1. On the evening of October 27, 1995, Britschge had been at a party in Scranton, Kansas. At the request of a friend, he drove an intoxicated teenage girl to her home in Overbrook, Kansas. Unsure that his friend had given him the correct address, Britschge asked the two young men who were outside the house matching the address if they knew the girl. They answered that they did, and one of the men identified himself as the girl's younger brother.

2. Around 11:00 p.m., the defendant Harmison, a part-time police officer for the city of Overbrook, was on patrol duty. He observed a group of people around a Toyota station wagon that appeared to have quickly pulled in and stopped. He also noticed that one person in the group had his back against the car, and it appeared to him that the group was confronting this person. Harmison pulled behind the station wagon to determine if the person being confronted needed assistance.

3. Britschge testified that this encounter with Harmison was his first with not only Harmison but with any Overbrook police officer.

4. Harmison left the patrol car's lights on when he exited the patrol car. As he approached the group, Harmison looked inside the station wagon. In response to Harmison's questions, Britschge said that he had driven the girl home, that he was nineteen years old, and that the station wagon was his car.

5. Harmison asked to see Britschge's driver's license. Britschge said that since he was not presently driving he was not required to produce his license.

6. Harmison looked inside the station wagon and saw beer on the floor. Harmison told Britschge that there was beer in the car, and Britschge responded that it was orange juice. Harmison shined his flashlight on a beer setting on the car's floorboard.

7. Harmison tried to open the car door, but it was locked. Harmison asked Britschge to unlock the door, but he refused.

8. Harmison told Britschge to put his hands on the car's hood, and Harmison then removed the car keys from Britschge's pocket. Harmison unlocked the car and started to search the car.

9. Britschge called Harmison some vulgar names as Harmison began entering

Britschge's car. Harmison then handcuffed Britschge and moved him to the rear of the station wagon. (Britschge Dep. p. 32, 1. 21–25). Harmison also asked a person at the front of the station wagon to move away into the front yard of a neighboring residence. After he was arrested and handcuffed, Britschge continued to call Harmison vulgar names, like "ass hole" and "fucking ass hole." (Britschge Dep. p. 26, 1. 12–15; p. 27, 1. 2–5). Britschge called Harmison some of these names to his face.

10. Harmison removed the beer from Britschge's car and observed that the beer was still cold. Harmison then walked Britschge back to the patrol car.

11. Harmison told Britschge to sit down in the front passenger seat. As he began sitting down, Britschge lifted himself and leaned back some in an effort to move a book and other things that were on the passenger seat. Then with his feet outside patrol car, Britschge "cursed" Harmison to his face saying that "you know, you're a real ass hole." (Britschge Dep. p. 33, 1.22—p. 34, 1. 4).

12. Harmison with an open hand then slapped Britschge on his left cheek and eye knocking Britschge's eyeglasses off. Britschge described it as "a nice vigorous swing, slap across my face." (Britschge Dep. p. 55, 1. 22). The slap moved Britschge's head sideways. Harmison picked up the eye glasses and set them on Britschge's lap.

13. The slap did not cut Britschge's face or cause any bleeding or bruising. The slap did spring the ear piece of his eyeglasses outward. At the jail, Britschge fixed the eyeglasses himself. The slap also left a red mark on the skin nearest the outside corner of Britschge's left eye. Britschge said the area was "swollen a little bit." (Britschge Dep. p. 40, 1. 10). Britschge did not receive any medical treatment for the slap and did not request any while he was in jail. When

he was released from jail approximately eighteen hours later, the redness was "barely visible." (Britschge Dep. 41, 1. 24). The plaintiff has no photographs of his injuries.

14. Britschge felt some pain in his cheek from the slap. By the time of his release, the pain had dissipated.

15. Britschge testified that Harmison's slap has caused him some emotional distress in the form of bad dreams and a lower opinion of law enforcement officers. Britschge has not sought nor received counseling or professional treatment for the alleged mental or emotional distress.

16. But for this single slap, Britschge does not claim that Harmison used "unreasonable force" at any other time during the incident. (Britschge Dep. p. 54, 1. 9).

17. Britschge testified that the names he called Harmison might cause "some people" to fight, but not "civilized people." (Britschge Dep. p. 57, 1. 4–5).

## ANALYSIS

██ In his complaint, Britschge charges that Harmison's single slap violated Britschge's rights under the Fourteenth Amendment. Harmison seeks summary judgment arguing that Britschge was not denied of any federal right and that Harmison is qualifiedly immune [1] from suit.

██ Harmison argues that the absence of any significant injury or egregious conduct entitles him to summary judgment on the Britschge's excessive force claim under the Fourth Amendment. In response, Britschge says his "claim is not for the use of excessive force to effect an arrest but a claim of police brutality i.e.: unlawful punishment." (Dk. 31 p. 1). Britschge goes on to argue that he "was viciously slapped because he exercised his first amendment right to free speech." (Dk. 31 p. 1).[2] Despite his varying charac-

---

1. The court considers the law concerning excessive force to be clearly established after the decision of *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment requires an officer's use of force to be objectively reasonable under the existing circumstances. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871–72. In excessive force cases, the Fourth Amendment inquiry of objective reasonableness

is the same substantive inquiry used for purposes of qualified immunity. *Mick v. Brewer,* 76 F.3d 1127, 1137 n. 5 (10th Cir.1996).

2. The plaintiff's complaint does not purport to allege any First Amendment retaliation claim. The complaint refers to the slap as "police brutality" and an act of violence and viciousness, but it does not allege that the slap occurred

terizations of his claim, Britschge analyzes his case exclusively under the objective reasonableness standard as discussed in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

The crux of the plaintiff's claim is whether the defendant used excessive force in the arrest. Excessive force claims are not subject to a single constitutional standard. *Graham*, 490 U.S. at 393–94, 109 S.Ct. at 1870–71. Section 1983 claims for excessive force during an arrest are analyzed under the Fourth Amendment. 490 U.S. at 397, 109 S.Ct. at 1872–73. The Fourth Amendment standard applies after the arrest and until there has been a judicial determination of probable cause to arrest. *Pride v. Does*, 997 F.2d 712, 716 (10th Cir.1993).

The Fourth Amendment analysis turns on whether the amount of force used was " 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intent or motivation." *Id.; Pride*, 997 F.2d at 716. These circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. In deciding what is reasonable under the circumstances, allowance must be made "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the manner of force that is necessary in a particular situation." 490 U.S. at 396–97, 109 S.Ct. at 1872. Thus, reasonableness must be decided "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872 (citations omitted).

The court does not believe that Harmison's single slap constitutes objectively unreasonable force. First, Harmison had observed that alcoholic beverages had been consumed. Harmison observed that Britschge's passenger was intoxicated and that there was beer inside Britschge's car. Second, Harmison was a single officer confronting what he reasonably perceived to be a potentially volatile group situation. Third, Britschge presented himself as highly upset, uncooperative, and argumentative; all of which are consistent with intoxication. Britschge refused simple requests to produce a driver's license and to unlock a car door and then used profanity in addressing the officer.

Facing these circumstances, Harmison took a reasonable graduated response towards maintaining control of the tense situation. Britschge's name-calling barrage not only indicated the level of Britschge's emotions but it also posed the danger of aggravating the emotions of other group members. A reasonable officer in these circumstances obviously would be concerned about monitoring the potential security risk presented to him and the group members. In an apparent effort to contain the situation, Harmison handcuffed Britschge, moved Britschge away from the group, and even instructed some of the group to disperse. These actions obviously were intended to deny Britschge an audience for his show and to minimize the security risks created by Britschge's vituperative outbursts. Harmison's initial measures were not completely effective, for now Britschge was content to yell the vulgar names at the officer for the benefit of his distant audience. So, Harmison reacted by moving Britschge to the patrol car in an apparent effort to muffle the name-calling. Harmison reasonably understood Britschge to be physically resisting this move when

because of anything that the plaintiff had said or done. Nor does the complaint make any reference to speech or actions protected by the First Amendment. The complaint utterly fails to put the defendant on notice of a First Amendment retaliation claim. In short, the court cannot reasonably read the complaint as alleging a valid First Amendment claim despite the plaintiff's failure to cite the First Amendment. *See Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Regardless of the deferential standards accorded

*pro se* pleadings, it remains true that a court must not "assume the role of advocate for the *pro se* litigant." *Id.* at 1110. Consequently, the court is not to "construct arguments or theories for the plaintiff in the absence of any" pertinent allegations. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991). Moreover, the plaintiff has never sought to amend his complaint to assert a First Amendment claim. For these reasons, the court does not regard any such claim to have been pleaded here.

Britschge, with his legs still outside the car, admittedly lifted himself from the front seat of the patrol car and partially laid back on the seat. Still not within the patrol car, Britschge revealed his emotionally charged state by calling Harmison "a real ass hole" straight to Harmison's face. Sensing that Britschge was extremely agitated and possibly hysterical, Harmison slapped Britschge a single time across the face.

The plaintiff argues the slap was unnecessary to effect the arrest or to secure his cooperation but was done only to punish him for calling Harmison a vulgar name. Britschge's allegations of a retaliatory motive behind Harmison's slap, even assuming he could prove them at trial, "are not relevant to a Fourth Amendment claim of excessive force." *Foster v. Metropolitan Airports Com'n.*, 914 F.2d 1076, 1082 (8th Cir.1990); *see Graham*, 490 U.S. at 397, 109 S.Ct. at 1872 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force.").

As for whether the slap was necessary or not, the plaintiff's perspective is not the one which governs this determination. Britschge says he was just trying to move things off the front seat and to shift his weight when he raised himself off the seat and laid back onto the seat. A person in Harmison's position could reasonably perceive the same actions as physically resisting being placed in the patrol car. Though Britschge says he had drank only a beer or two sometime earlier in the day, a person observing a car hurriedly pulled over, an intoxicated passenger, beer in the car, an uncooperative manner, and the ranting of abusive language could reasonably believe that Britschge also was under the influence of alcohol and that his actions could become unpredictable and irrational. The plaintiff's perception of himself as "being completely docile and obedient" is not the one from which we judge the reasonableness of Harmison's actions. (Dk. 31 p. 2). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872.[3]

For that matter, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ..., violates the Fourth Amendment." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Other than the single slap, there is no evidence or allegations that Harmison pushed, shoved or in any way treated the plaintiff roughly in arresting and transporting him to jail. After the slap had its intended effect, Harmison apparently had little difficulty in handling Britschge. Britschge did not complain to any at the jail about Harmison's treatment of him.

■ The force of Harmison's slap did not cause any bleeding or bruising and did not require any medical attention. The full extent of Britschge's injuries was a temporary red mark, minor swelling, and a short-term stinging sensation. The plaintiff offers no physical evidence of his injuries. While a plaintiff need not sustain a significant injury to have an excessive force claim under Fourth Amendment, the extent of injury is a relevant factor in assessing the reasonableness of the force. *Fordyce v. City of Kansas City, Kan.*, No. 95–2285–GTV, 1996 WL 570195, *5 (D.Kan. Sept. 30, 1996); *Hawley v. City of Topeka, Kan.*, No. 92–4042, 1993 WL 390407, *2 (D.Kan. Sept. 20, 1993); *see Burrows v. City of Tulsa*, 25 F.3d 1055, 1994 WL 232169 (10th Cir.1994) (table); *Pride v. Does*, 997 F.2d at 717. The minimal nature of the plaintiff's claimed injury fully demonstrates that Harmison's slap was forceful enough for him to regain control of the situation without unnecessarily punishing or harming Britschge.

Based on the summary judgment record, the plaintiff is unable to prove as a matter of law that Harmison's single slap under the circumstances was objectively unreasonable force. For this reason, the defendant is entitled to summary judgment.

---

**3.** "Officers must be given the flexibility to pursue their duties and make tough choices on a moment's notice without fear of a lawsuit based

merely on hindsight." *Sweatt v. Bailey*, 876 F.Supp. 1571, 1577 (M.D.Ala.1995) (citations omitted).

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 27) is granted.