SHUBERT CONSTRUCTION COMPANY, INC., Plaintiff,

v.

The SEMINOLE TRIBAL HOUSING AUTHORITY, the Seminole Tribe of Florida, and the United States Department of Housing and Urban Development, Defendants.

No. 79–6706–Civ–JAG.

United States District Court, S. D. Florida, N. D.

June 9, 1980.

*Cement Asbestos Products v. Hartford Accident & Indemnity Company*, 592 F.2d 1144–1147 (10th Cir.1979).

Joel D. Kenwood, Baskin & Sears, Palm Beach, Fla., for plaintiff.

Stephen H. Whilden, Hollywood, Fla., for Seminole Tribal Housing Authority and Seminole Tribe of Florida.

Felice Weiner, Atlanta, Ga., Kathy Olesker, Asst. U.S. Atty., Miami, Fla., for defendants.

## ORDER OF DISMISSAL

GONZALEZ, District Judge.

THIS CAUSE is before the Court on the respective Motions to Dismiss of the Defendants, Seminole Tribe of Florida, and Department of Housing and Urban Development.

Plaintiff alleges that this court has jurisdiction pursuant to 25 U.S.C. § 1302, 28 U.S.C. § 1343, and 28 U.S.C. § 1346(b).

The Court finds that Counts I and II of Plaintiff's complaint shall be dismissed for lack of federal jurisdiction; and that Count III should be dismissed by reason of Plaintiff's failure to exhaust administrative remedies.

Plaintiff, Shubert Construction Company, Inc., contracted with the Seminole Tribal Housing Authority to build a 50-unit community housing project funded by the Department of Housing and Urban Development (HUD) on the Hollywood Seminole Indian Reservation. Plaintiff alleges that $117,274.88 remains due and owing under its original contract, plus an additional sum in excess of $100,000.00 for extra work performed.

Count I is a breach of contract claim asserted against the Seminole Tribal Housing Authority. Count II is an action for unjust enrichment against both the Housing Authority, and the Seminole Tribe of Florida. Count III alleges negligence on the part of HUD because of its failure to promptly approve or disapprove change orders. Plaintiff performed the requested changes but has never been compensated or reimbursed.

The Tribe has moved to dismiss the complaint based upon its sovereign immunity from suit. See *Turner v. United States*, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919). Although plaintiff argues that the Tribe has waived immunity, that issue need not be determined.

Regardless of the existence or non-existence of immunity, plaintiff must first meet the initial requirement of alleging a sufficient basis for federal jurisdiction. See *Enterprise Electric Co. v. Blackfeet Tribe of Indians*, 353 F.Supp. 991 (D.Mont.1973).

Plaintiff's assertion of 25 U.S.C. § 1302 as grounds for federal jurisdiction is incorrect. Section 1302, the focal point of The Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1302–03, lists certain individual civil rights which are to be protected from violation by any Indian tribe exercising powers of self-government. The Act's correct application and interpretation has been a source of confusion from the very beginning.

In determining the correct application of the Act, several courts found that an allegation of section 1302 together with an allegation of 28 U.S.C. § 1343(4) was sufficient to state a basis for federal jurisdiction. Section 1343(4) provides the federal courts with original jurisdiction in cases brought pursuant to an act of Congress protecting civil rights. Therefore, these courts reasoned, § 1343 permits federal courts to hear cases involving The Indian Civil Rights Act (ICRA).

In *Jacobson v. Forest County Potawatomi Community*, 389 F.Supp. 994 (E.D.Wis.1974) the court recognized that the interests protected by ICRA were not as broad as those found in the United States Constitution, and, therefore, held that federal district courts had jurisdiction under 28 U.S.C. § 1343, and 25 U.S.C. § 1302 in Indian Civil Rights cases only to protect those *limited* rights enumerated in the Act. See also *Dodge v. Nakai*, 298 F.Supp. 17 (D.Ariz. 1968).

Other courts apparently agreed with this reasoning. For example,

In our opinion, 28 U.S.C. § 1343(4) gives the district court jurisdiction to determine, in a proper case, whether an Indian Tribe has denied to one of its members any of the rights given to the members under the Indian Bill of Rights. *Luxon v. Rosebud Sioux Tribe of South Dakota*, 455 F.2d 698, 700 (8th Cir. 1972).

Having assumed that §§ 1343 and 1302 provide federal jurisdiction, the courts then turned their attention to such additional issues as whether the plaintiff must exhaust tribal remedies before bringing suit, see e. g. *Necklace Tribal Court of Three Affiliated Tribes of Fort Berthold Reservation*, 554 F.2d 845 (8th Cir. 1977); and whether plaintiff's claim fell within those rights specifically protected by the ICRA. *Hickey v. Crow Creek Housing Authority*, 379 F.Supp. 1002 (S.D.S.D.1974) for example, held that a basic breach of contract claim does not present the kind of constitutional deprivation addressed by the Act.

Here, as in *Hickey*, the plaintiff alleges that defendants' failure to pay money owed on a contract constitutes an unconstitutional deprivation of property without due process of law under the federal constitution. Were that argument to be accepted as correct every breach of contract case would involve a federal constitutional question and thereby find its way into a federal court.

The judicial consideration of these additional issues eventually proved unnecessary. In 1978 the United States Supreme Court's clarified the effect of section 1302 in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). There the Court clearly stated that the only type of action authorized by the ICRA was a writ of habeas corpus as provided in § 1303. "Creation of a federal cause of action for the enforcement of rights created in Title I, however useful it might be in securing compliance with § 1302, plainly would be at odds with the congressional goal of protecting tribal self-government." *Id.* 98 S.Ct. at 1680. The Court further explained that although section 1302 does establish guidelines for tribal forums to follow, it does not authorize suits to enforce those guidelines—other than by writ of habeas corpus.

Although Congress has the power to authorize civil rights actions to redress all constitutional violations, it elected instead to honor the quasi-sovereignty of the Indian nations. Because the culture and structure of the tribes differ greatly from those of state and federal governments, the tribes were deemed to be in the best position to evaluate their members' rights in accordance with tribal custom. *Id.* at 1684. Accordingly, the Court held that § 1302 might only be redressed by way of habeas corpus.

It is clear, therefore, that plaintiff has not properly alleged a cause of action under sections 1302 and 1343.

Plaintiff's claim against both the Tribe and Housing Authority is basically contractual or quasi-contractual. No federal question is thereby presented. Further, since no diversity of citizenship exists there is no basis for federal jurisdiction.

The court finds, therefore, that it does not have subject matter jurisdiction over the claims against the Seminole Tribe and Seminole Housing Authority and that Counts I and II should be dismissed for lack of jurisdiction.

Plaintiff has alleged jurisdiction for its claim against HUD under 28 U.S.C. § 1346(b) the Federal Tort Claims Act.

■ Because the Federal Tort Claims Act represents a waiver of sovereign immunity its provisions are narrowly construed so as to favor the sovereign. See *Hall v. Depart-*

ment of Health, Education and Welfare, 199 F.Supp. 833 (S.D.Tex.1960). Only those suits which strictly comply with the terms of the Act are permissible.

■ 28 U.S.C. § 2675 provides that a claim against a federal agency may not be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." The section also allows suit if the agency fails to make final disposition within six months of the filing of the claim.

28 Code of Federal Regulations 14.2 describes Standard Form 95 as the type of written claim to be submitted for claims against federal agencies. 24 C.F.R. 17.2 describes the HUD procedures and requires the Standard Form 95 or other written notice to be filed before suit can be brought.

Plaintiff asserts that it has complied with the notice requirement because it engaged in oral and written negotiations with the Jacksonville area office of HUD regarding this action.

It is undisputed that Plaintiff's counsel met with a HUD employee to discuss the problems plaintiff was having with regard to the construction of housing on the Seminole Reservation. Indeed, that employee prepared a HUD Representative Trip Report concerning the problems. Plaintiff contends this report proves that HUD knew of the claim and has refused to take action upon it.

While the report shows that a HUD employee was aware of the construction problems arising under the contract, it does not show that plaintiff intended to assert a tort claim. The HUD representative in his conference with plaintiff was attempting to resolve the difficulties that the contractor and the tribal housing authority had encountered under the contract. A discussion concerning a contractual dispute, however, does not give notice that a tort action is contemplated against the United States or one of its agencies.

HUD has submitted affidavits supporting its argument that no tort claim was filed with its office. Because the HUD Representative TRIP Report does not give notice of a tort action, plaintiff has not fulfilled the condition precedent of filing the claim with HUD.

Count III of the Complaint must, therefore, likewise be dismissed.

It is thereupon

ORDERED AND ADJUDGED that this case be and the same is hereby DISMISSED without prejudice.