ORDINANCE 59 ASSOCIATION,
Plaintiff,

v.

Bruce BABBITT, Secretary of United States Department of Interior; The Bureau of Indian Affairs; Eastern Shoshone Tribe Business Council, and its members in their individual and official capacities, John Washakie, Vernon Hill, Bud McAdams, Mike LaJeunesse, Ivan Posey, and John Wadda, Defendants.

No. 96–CV–0327–J.

United States District Court,
D. Wyoming.

July 11, 1997.

Charles E. Graves, Timothy C. Kingston, Charles E. Graves & Associates, Cheyenne, WY, for plaintiff.

Nicholas Vassallo, U.S. Attorney's Office, Cheyenne, WY, John C. Schumacher, David R. Martin, Law Office of John Schumacher, Fort Washakie, WY, for defendants.

## ORDER GRANTING FEDERAL DEFENDANTS' MOTIONS TO DISMISS, GRANTING TRIBAL DEFENDANTS' MOTION TO DISMISS, AND DISMISSING AMENDED COMPLAINT

ALAN B. JOHNSON, Chief Judge.

This matter came before the Court on June 27, 1997, for hearing on the Motions to Dismiss filed by defendants Babbitt and the Bureau of Indian Affairs ("Federal Defendants") and by the Eastern Shoshone Tribal Business Council, its members in their individual and official capacities, John Washakie, Vernon Hill, Bud McAdams, Mike LaJeunesse, Ivan Posey and John Wadda ("Tribal Defendants").

### I. INTRODUCTION

Plaintiff, Ordinance 59 Association, is an organization composed of 43 individuals who applied for membership in the Eastern Shoshone Tribe under Enrollment Ordinance No. 59, enacted in 1988 and repealed in 1989. In its Amended Complaint, plaintiff organization contends that defendant Eastern Shoshone Tribal Business Council, the individual council members and the Bureau of Indian Affairs ("BIA") have all improperly failed to enroll its members as members of the Eastern Shoshone Tribe pursuant to the Tribe's now-repealed Enrollment Ordinance No. 59. Plaintiff contends that the failure is in violation of its members' rights under a duly enacted ordinance of the Tribe and under the orders of the Tribal Courts, which ordered that the Shoshone Business Council enroll plaintiff's members and later declared that

plaintiff's members are enrolled members of the Tribe pursuant to Ordinance No. 59. Plaintiff requests that this court compel either the Eastern Shoshone Tribe Business Council or the BIA to enroll its members pursuant to Enrollment Ordinance No. 59 under a mandatory injunction or by a declaration of this court that plaintiff's members are enrolled members of the Eastern Shoshone Tribe.

Defendants move to dismiss the action. The Tribal Defendants move to dismiss under Fed.R.Civ.P. 12(b) contending that this court lacks personal and subject matter jurisdiction and that plaintiff fails to state a cause of action for which relief can be granted. The Federal Defendants move to dismiss under Fed.R.Civ.P. 12(b) for lack of subject matter jurisdiction over all claims, failure to state a claim upon which relief can be granted and lack of standing.

## II. STANDARD FOR MOTION TO DISMISS

As a preliminary matter the court will address the proper standard for consideration of the Motions to Dismiss.

Written documents that are attached to the complaint as an exhibit are considered part of the complaint and may therefore be considered in connection with a motion to dismiss under Rule 12(b). *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir.1991) (citing Fed.R.Civ.P. 10(c)).

A motion to dismiss for failure to state a claim is brought under Fed.R.Civ.P. 12(b)(6); a motion to dismiss for lack of subject matter jurisdiction is brought only under Fed. R.Civ.P. 12(b)(1). *State Farm Mutual Automobile Ins. Co. v. Dyer*, 19 F.3d 514, 518 n. 8 (10th Cir.1994). A dismissal for "lack of subject matter jurisdiction is not on the merits [and] its *res judicata* effect is limited to the question of jurisdiction." *Id.*

This court cannot grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt the plaintiff could prove no set of facts supporting the claim which would entitle plaintiff to relief. In other words, the court assesses whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Bintner v. Burlington Northern, Inc.*, 857 F.Supp. 1484, 1487 (D.Wyo.1994). The court presumes the complaint's allegations are true and construes them most favorably to plaintiff. *Id.*

■ Recently the Tenth Circuit has noted that in a case where an Indian tribe has sovereign immunity, the federal district court lacks subject matter jurisdiction over the case, which means that the motion to dismiss on the basis of the Tribe's sovereign immunity is a Rule 12(b)(1) matter. *Fletcher v. United States*, 116 F.3d 1315, 1319–20 (10th Cir.1997) *cf. Union Pacific Railroad Co. v. Burton*, 949 F.Supp. 1546, 1552 (D.Wyo.1996) (motion to dismiss on the basis of Eleventh Amendment immunity may be under various procedural mechanisms, including a motion under Fed.R.Civ.P. 12(b)(1)).

■ The standards for a trial court's consideration of matters under Rule 12(b)(1) has been fully explained in *Holt v. U.S.*, 46 F.3d 1000 (10th Cir.1995).

Generally Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 56 motion when resolution of the

jurisdictional question is intertwined with the merits of the case.

*Id.* at 1002–03 (citations omitted).

Plaintiff urges this court to hold an evidentiary hearing on numerous matters that it contends are important factual issues that are relevant to deciding the motions to dismiss.

██ This court finds that an evidentiary hearing is unnecessary on the issues of sovereign immunity and lack of subject matter jurisdiction. Although the defendants attach various exhibits to their motions to dismiss, the court does not construe the motions as relying on matters outside of the complaint and the exhibits thereto. The defendants' exhibits are generally aimed at showing there is another side to the conflict over membership pursuant to Ordinance No. 59, but are not necessary to the court's decision on the motions to dismiss. What is important is that defendants do not dispute the complaint's factual allegations which are dispositive for the motions to dismiss.

Accordingly, the court will base its decision on the facts as alleged in the Amended Complaint and in the exhibits attached to the Complaint and the Amended Complaint. The court presumes those allegations to be true for the purposes of these motions only.

### III. FACTUAL ALLEGATIONS

The Ordinance 59 Association is comprised of 43 individuals who applied for membership in the Eastern Shoshone Tribe under Enrollment Ordinance No. 59, enacted in September, 1988. Amended Complaint, ¶ 1 and Ex. A.

Ordinance No. 59 was enacted by the Shoshone General Council, the supreme governing body of the Tribe. The Shoshone General Council is comprised of all members of the Tribe who are over 18 years of age. The daily business of the Tribe is conducted by the Eastern Shoshone Tribe Business Council ("Business Council"), a body of six members. All of the named defendants in this case are elected members of the Business Council. Under Ordinance No. 59, the Business Council was charged with the responsibility of reviewing all enrollment applications and making a preliminary determination about enrollment. Under Ordinance No. 59 the Business Council could preliminarily decide to accept, reject, or table any application. That decision would then be posted for 30 days during which time any enrolled member of the Tribe could submit a written protest. Ordinance No. 59 § I(B)(5). Ordinance No. 59 expressly provides for a right of appeal as follows:

> *Appeal Process.* An applicant for enrollment ... shall have the right to appeal any action for the Shoshone Business Council that is adverse to the applicant. Exclusive jurisdiction over such appeals shall lie with the General Council of the Shoshone Indian Tribe. The decision of the General Council shall be final.

*Id.* § I(C)(4).

By late 1988, 82 individuals had completed the application process under Ordinance No. 59. Amended Complaint, ¶¶ 9 and 10. In addition, approximately 382 other applications were in various stages of consideration under the ordinance. *Id.* ¶ 11. Although the Business Council had initially approved the applications, in December of 1998 the Business Council voted to table action on all pending applications. *Id.* ¶ 12.

On February 17, 1989, the General Council, by referendum vote, repealed Enrollment Ordinance No. 59. Complaint Ex. I (attached application at 1, ¶ 2). On March 31, 1989, the General Council repealed Ordinance No. 59 and reinstated an earlier enrollment ordinance, Ordinance No. 8. *Id.*

In September of 1989, an action seeking an order to compel the Business Council and the BIA to enroll eligible applicants under Ordinance No. 59 was brought before the Shoshone and Arapaho Tribal Court ("Tribal Court"). Amended Complaint, ¶ 15. The Tribal Court ordered enrollment of the tabled applicants pursuant to repealed Ordinance No. 59. *Id.* ¶ 16. The Business Council appealed to the Shoshone and Arapaho Tribal Court of Appeals ("Court of Appeals"); and again plaintiff's members prevailed as the Court of Appeals affirmed the action of the Tribal Court. *Id.* ¶¶ 17 and 18.

At the June 9, 1993, General Council Meeting the Council repealed Ordinance 8 and passed a new enrollment ordinance—Ordinance 62. Complaint, Ex. I (attached application at 1, ¶ 2).

Plaintiff contends that Ordinance No. 62 is "more restrictive than Ordinance No. 59 and the plaintiff's members would not be eligible for enrollment thereunder." Plaintiff's Response to Defendant's Motion to Dismiss, at 7 n. 4.

Unfortunately the issues raised by enrollment have pitted some of the members in the plaintiff organization against members of the Business Council in actions brought in Tribal Courts. On February 9, 1994, the Tribal Court of Appeals affirmed the Tribal Court's determination that the members of the Business Council were in contempt for failing to enroll all persons who met the eligibility requirements established by Ordinance No. 59. Amended Complaint, ¶¶ 21–22. On March 10, 1994, the Tribal Court declared all eligible persons under Ordinance No. 59 to be enrolled members of Eastern Shoshone Tribe. *Id.* ¶ 23 and Ex. D.

Despite the Tribal Courts' rulings, the Shoshone Business Council has not enrolled any members under Ordinance No. 59.

On May 1, 1996, plaintiff's attorney wrote to the BIA's local superintendent, enclosing a copy of the Tribal Court's Order declaring its members were enrolled members of the Tribe and asking how to obtain BIA recognition of that status. Complaint Ex. F. On May 14, 1996, the BIA responded that it had "no statutory, regulatory, or Tribal authority to intervene on behalf" of plaintiff's members. Complaint Ex. G. On August 5, 1996, plaintiff submitted a document to the BIA entitled "Application to the BIA for Enrollment in the Eastern Shoshone Tribe." Complaint, Ex. I. The BIA's position was again reiterated on October 22, 1996, in a letter from the superintendent to council for the plaintiffs. Complaint, Ex. K. This action was commenced on December 19, 1996 and the Amended Complaint was filed on April 8, 1997.

## IV. NATURE OF ACTION

The First Amended Complaint seeks a declaratory judgment that plaintiff's members are enrolled members of Eastern Shoshone Tribe and an award to its members of all benefits of enrollment retroactive to September 9, 1988, the date Ordinance No. 59 was originally adopted by the Tribe. Plaintiff also seeks an award of compensatory damages to the extent allowed by law, plus attorney fees and costs.

Plaintiff asserts five claims in support of its prayer for relief. In its first claim, plaintiff seeks a declaration supporting the findings of the Tribal Courts and declaring that its members are enrolled members of the Eastern Shoshone Tribe entitled to all rights, privileges and benefits retroactive to September 9, 1988. In the second claim, plaintiff requests injunctive relief directing the BIA to enroll the plaintiff's members as fully enrolled members of the Eastern Shoshone Tribe without further action of the Business Council. The third claim seeks injunctive relief directing the Shoshone Business Council and its members to enroll plaintiff's members as full members of the Tribe.

The fourth and fifth claims were added in the Amended Complaint. The fourth claim alleges the Tribal Defendants violated the Indian Civil Rights Act (ICRA) by denying the plaintiff's members equal protection of the laws of the Tribe. 25 U.S.C. § 1302(8). Finally, the fifth claim alleges that the Federal Defendants are liable to the plaintiff and its members for having violated 25 U.S.C. § 163, which gives the Secretary of the Interior discretionary authority to cause a final roll to be made of a Tribe's membership.

After reviewing the materials submitted by the parties and the arguments of counsel, the Court will grant defendants' Motions to Dismiss the First Amended Complaint.

## V. DISCUSSION

In response to the Motions to Dismiss, plaintiff asserts that this court has subject matter jurisdiction based upon 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act), 25 U.S.C. §§ 1301–1303 (Indian Civil Rights Act), and

25 U.S.C. § 163 (discretionary authority of the Secretary of Interior to make a membership roll for the Eastern Shoshone Tribe). Plaintiff argues that the Shoshone Business Council should be compelled by the federal court to follow the dictates of the Tribal Courts because the Business Council and its members and officers should follow tribal law. In addition, plaintiff contends that the Secretary of Interior and the BIA, by following the direction of the Business Council in this matter or failing to act favorably upon plaintiff's request to make a tribal membership roll showing them as enrolled members have also fallen in violation of the Order of the Tribal Courts and have failed in their responsibilities to the Eastern Shoshone Tribe. Plaintiff characterizes the Business Council as ignoring the authority of the Shoshone General Council. Plaintiff asserts that the court may assume jurisdiction over these claims under authority of *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682 (10th Cir.1980), because of the "absolute necessity for such jurisdiction." It is plaintiff's view that its members have no remedy other than a federal court's assumption of jurisdiction for the reason that defendants will not obey the rulings of the Tribal Courts.

The court will address the Tribal Defendants' Motion to Dismiss first.

## A. TRIBAL DEFENDANTS

### 1. *Tribal Sovereign Immunity*

The Tribal Defendants contend that this court lacks subject matter jurisdiction, citing the Tribe's sovereign immunity from suit.

The landmark case of *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), was an action brought by a female member of the Santa Clara Pueblo and her non-member daughter seeking declaratory and injunctive relief against the Pueblo and its governor pursuant to the ICRA. The plaintiffs in *Santa Clara* claimed that the Tribe's membership ordinance denied membership to the children of female members who married outside the Tribe, but not to the children of similarly-situated men of that Tribe in violation of their right to equal protection. Unlike the children of male Tribal members who married outside the Tribe, the children of female members who married outside the Tribe were denied membership and as a consequence could not vote in Tribal elections, hold office in the Tribe, remain on the reservation after the mother's death, or inherit the mother's home or her possessory interests in communal lands of the Pueblo. *Id.* at 52, 98 S.Ct. at 1674.

The *Santa Clara* plaintiffs brought their complaint pursuant to § 1302(8) of the ICRA, which provides that no Indian tribe may deny to any person within its jurisdiction equal protection of its laws or deprive any person of liberty or property without due process of law. 25 U.S.C. § 1302(8). The *Santa Clara* defendants moved to dismiss.

The Court in *Santa Clara* summarized the independent self-governing nature of Indian tribes, comprising distinct political communities.

Indian tribes are "distinct, independent political communities, retaining their original natural rights" in matters of local self-government. *Worcester v. Georgia*, 6 Pet. 515, 559, 8 L.Ed. 483 (1832); *see United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975); F. Cohen, Handbook of Federal Indian Law, 122–123 (1945). Although no longer "possessed of the full attributes of sovereignty," they remain a "separate people, with the power of regulating their internal and social relations." *United States v. Kagama*, 118 U.S. 375, 381–382, 6 S.Ct. 1109, 1112–1113, 30 L.Ed. 228 (1886). *See United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303, (1978). They have power to make their own substantive law in internal matters, *See Roff v. Burney*, 168 U.S. 218, 18 S.Ct. 60, 42 L.Ed. 442 (1897) (membership); *Jones v. Meehan*, 175 U.S. 1, 29, 20 S.Ct. 1, 12, 44 L.Ed. 49 (1899) (inheritance rules); *United States v. Quiver*, 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 1196 (1916) (domestic relations), and to enforce that law in their own forums, *see, e.g., Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).

*Id.* at 55–56, 98 S.Ct. at 1675 (underlined emphasis added).

■ The Court stated that it has generally been recognized that Indian Tribes as distinct and separate sovereigns have been "regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Id.* at 56, 98 S.Ct. at 1676 (citing *Talton v. Mayes*, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896)). Nevertheless, "Congress has plenary authority to limit, modify or eliminate powers of local self-government which the Tribes otherwise possess." *Id.*

■ In *Santa Clara*, the Court reiterated that "Indian Tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Id.* at 58, 98 S.Ct. at 1677 (citations omitted). Although Congress possesses the power to enact legislation affecting aspects of tribal sovereignty, in the absence of an unequivocally expressed waiver, or Congressional action, sovereign immunity is the rule. The Court concluded, "that suits against the Tribe under the ICRA are barred by its sovereign immunity from suit." *Id.* at 59, 98 S.Ct. at 1677.

This rule barring suits against a tribe under the ICRA was recently reiterated in this circuit in *Fletcher, supra.*

> Tribal sovereign immunity is immunity from suit in federal court. *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169 (10th Cir.1992). A conception of immunity from suit which leaves a tribe nonetheless vulnerable to a court's own program of alternative dispute resolution accords no meaningful immunity.

116 F.3d at 1326.

■ In *Santa Clara* the Court also examined whether the officers of the Tribe were protected by the Tribe's sovereign immunity from suit. "Although Congress clearly has power to authorize civil actions against tribal officers, and has done so with respect to habeas corpus relief in § 1303, a proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the

absence of clear indications of legislative intent." *Id.* at 60, 98 S.Ct. at 1678.

The *Santa Clara* Court extensively examined the legislative history of the ICRA and found only that the only remedy provided therein was for habeas corpus relief in criminal cases under the ICRA. Therefore, the Court concluded that "unless and until Congress makes clear its intention to permit additional intrusion on tribal sovereignty that adjudication of such actions in a federal forum would represent, we are constrained to find that § 1302 [of the ICRA] does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers." *Id.* at 72, 98 S.Ct. at 1684 (underlined emphasis added).

> This rule was restated in *Fletcher,*
>
> Because the relief requested by Individual Plaintiffs, concerning rights to vote in future tribal elections and hold tribal office, if granted, would run against the Tribe itself, the Tribe's sovereign immunity protects these defendants [tribal officers] in their official capacity. See *Kenai Oil and Gas, Inc. v. Department of the Interior*, 522 F.Supp. 521, 531 (D.Utah 1981) ("Tribal immunity may not be evaded by suing tribal officers...."), *aff'd*, 671 F.2d 383 (10th Cir.1982).... Thus, Tribal Defendants were entitled to sovereign immunity as far as the official capacity claims, unless there is an unequivocally expressed waiver either by the Tribe or abrogation by Congress.

116 F.3d at 1324.

Thus, defendants Business Council and its members in their official capacity are entitled to sovereign immunity from suit under *Santa Clara.*

### 2. Dry Creek Exception to Sovereign Immunity

Plaintiff recognizes that *Santa Clara* is binding authority, but asserts that it is entitled to proceed under the exception created by the *Dry Creek* case. Plaintiff contends that the nature of the dispute between the parties here differs substantially from the "intra-tribal" dispute addressed in *Santa Clara* because it is not seeking to strike down a provision of the tribal law, but rather

seeking to enforce its members' rights under an ordinance. Plaintiff argues that the assumption of jurisdiction here will bolster the rulings of the tribal courts and support the original enactment of Ordinance No. 59 by the Shoshone General Council.

A narrow exception to the rule expressed in *Santa Clara* was created in *Dry Creek Lodge, supra*. In *Dry Creek*, a non-Indian corporation claimed it lost its hunting lodge property and business because it was arbitrarily denied access over Indian property to its property which was located on a patented tract within the Wind River Indian Reservation. 623 F.2d at 683–84. The non-Indian plaintiffs brought suit for damages against the Indian Tribes under the ICRA.

The federal district court dismissed the landowner's suit for lack of subject matter jurisdiction, based upon authority of *Santa Clara*. On appeal the Tenth Circuit Court of Appeals reversed, distinguishing *Santa Clara*, finding that (1) the issues in *Dry Creek* related to matters outside of internal tribal affairs and concerned an issue with a non-Indian and (2) although the plaintiffs had exhausted every effort to find a forum to consider the issues, they were nevertheless without remedy. *Id.* at 685.

The *Dry Creek* exception was later explained in *White v. Pueblo of San Juan*, 728 F.2d 1307, 1312 (10th Cir.1984). In *White*, non-indians sued the Tribe in federal court contending that it had, by intimidation, compelled them to sell their property within the reservation to the Tribe.

The majority in *Dry Creek* distinguished *Santa Clara* and held that the federal district court possessed jurisdiction to entertain an action for damages and injunctive relief against the Indian tribes pursuant to the ICRA....

The rationale behind the holding of the Tenth Circuit in Dry Creek was based upon what the court regarded as absolute necessity. In other words, to deny relief meant that the persons who had built the hotel could not gain access to it, nor could they attract members of the public. Necessarily the *Dry Creek* opinion must be regarded as requiring narrow interpretation in order to not come into conflict with

the decision of the Supreme Court in *Santa Clara*. Accordingly, the *Dry Creek* decision ought to be interpreted to provide a narrow exception to the traditional sovereign immunity bar from suits against Indian tribes in federal courts. In addition, to adhere to the principles of *Santa Clara*, the aggrieved party must have actually sought a tribal remedy, not merely have alleged its futility. This is not merely a requirement that the exhaustion of tribal remedies is a prerequisite to federal jurisdiction, but instead, that tribal remedies, if existent, are exclusive.

\* \* \* \* \* \*

... [T]here can be no expansive interpretation of *Dry Creek* without opening up the scope of lawsuits against tribes.

\* \* \* \* \* \*

The Whites chose instead to continue this action in federal court, claiming that their refusal to pursue a tribal remedy is excusable on the basis of futility. But this is not the law in the Tenth Circuit; speculative futility is not enough to justify federal jurisdiction. The tribal remedy must be shown to be nonexistent by an actual attempt before a federal court will have jurisdiction.

728 F.2d at 1311–13 (underlined emphasis added).

The *Dry Creek* exception was recently examined in *Olguin v. Lucero*, 87 F.3d 401 (10th Cir.1996) when members of the Isleta Tribe brought a civil rights action in federal court against former and current members of the Tribal Council as well as the Governor of the Pueblo of Isleta. *Olguin* arose out of the action of the Tribe barring one plaintiff's husband from the reservation. In *Olguin*, the plaintiffs contended that their case fell within the *Dry Creek* exception. The Tenth Circuit disagreed because it found a "crucial distinction" from the exception created in *Dry Creek*.

[Plaintiffs] attempt to factually distinguish their case from *Santa Clara*. This attempt is misguided. The ruling in *Santa Clara* was not fact specific, but rather, a detailed look at the legislative history of

the statute culminating in the judicial interpretation that the Indian Civil Rights Act provides a federal remedy solely in habeas corpus proceedings. Appellants also try to argue they fall within *Dry Creek Lodge's* narrow exception. Appellants admit they have filed an action in tribal court similar to the current action but claim "[d]ue to the lack of any action on [Appellants'] tribal court complaints until and unless the federal Complaint was filed, it is apparent that there was no 'internal relief available' to [Appellants] in the instant case and, therefore, they were in the same position as the [p]laintiffs in *Dry Creek Lodge.*" The crucial distinction is the plaintiffs in Dry Creek Lodge were prevented from even filing a cause of action in tribal court and were instead directed to use "self help," while the appellants currently have a cause of action pending before the tribal court . . . . What we have here is a non-habeas corpus dispute existing solely between tribal members, which occurred on tribal land and is set to be heard in tribal court. Under these circumstances it is clear the federal court lacked jurisdiction to hear the claims under the Indian Civil Rights Act.

*Id.* at 404 (underlined emphasis added).

Accordingly, the Tenth Circuit affirmed the trial court's dismissal of the *Olguin* complaint for lack of subject matter jurisdiction. *Id.*

Plaintiff alleges that its members have no dispute with the Shoshone General Council and contend that the General Council has not taken any action to alter the rights of those who have complied with the provisions of Ordinance No. 59.[1] Thus, plaintiff contends that where the defendants are the Business Council and its individual members, and not the Shoshone General Council, that sovereign immunity does not apply because it is not seeking to invalidate an ordinance but instead to enforce an ordinance and the Tribal Courts' orders regarding that ordinance.

■ Plaintiff may not circumvent the Tribe's sovereign immunity by re-characterizing its action as supporting or enforcing a tribal ordinance instead of challenging an ordinance. As in *Fletcher,* where the relief plaintiff seeks in this case would run against the Tribe itself, the Tribe's sovereign immunity bars the action against the defendant Tribal officers in their official capacity and against arms of Tribal government such as the Shoshone Tribe Business Council.

The court also rejects plaintiff's argument that its members may be distinguished from the plaintiff in *Santa Clara* and are instead similar to the plaintiffs in *Dry Creek* because the Business Council's refusal to obey the Tribal Court's order has rendered them non-Indians. The briefs of the Tribal Defendants and the plaintiff discuss the Indian/non–Indian status of the plaintiff's members as a prerequisite to the application of *Dry Creek.* However, this court believes that later Tenth Circuit case clarified that the *Dry Creek* exception did not turn on the non-Indian status of the plaintiff.

■ To begin with, it must be remembered that one of the plaintiffs in *Santa Clara* was the non-member daughter of the tribal member and represented the entire class of similarly situated non-members. As in the present case, in *Santa Clara* the lawsuit resulted from a tribe's refusal, based on its reading of its own membership ordinances, to recognize certain persons as members. As was true of the class represented by the daughter in *Santa Clara,* each of plaintiff's members must have had at least one parent who was an enrolled member of the Tribe,[2] although they themselves are not members. If plaintiff's members are non-Indians in this case, because they have been denied status as enrolled members, by the same logic, the non-enrolled class of plaintiffs in Santa Clara would be non-Indian. Thus,

---

**1.** This allegation is contested. The Tribal Defendants contend that in enacting enrollment Ordinance No. 62, the General Council did alter the rights of those who had applied under previous ordinances.

**2.** Otherwise they would not have been eligible under Ordinance No. 59. Ordinance No. 59, § I(A)(2)(a) ("at least one parent of the applicant must be an enrolled member of the Shoshone Indian Tribe of the Wind River Reservation . . . ").

the status of a plaintiff as an Indian is not at the core of *Santa Clara* holding. Accordingly, in this case, as in *Santa Clara*, whether or not the plaintiffs are Indians or non-Indians is not dispositive to the issue of a Tribe's sovereign immunity from suits under the ICRA.

In *White* the court rejected the parties' arguments that made non-Indian status important to the application of the *Dry Creek* exception. 728 F.2d at 1310, 1312 & n. 1. In later cases such as *Ramey Construction Co. v. Apache Tribe of Mescalero Reservation,* 673 F.2d 315, 319 and n. 3 (10th Cir.1982) and *Nero v. Cherokee Nation of Oklahoma,* 892 F.2d 1457, 1460 n. 5 (10th Cir.1989), the Tenth Circuit repeatedly noted that Dry Creek involved "particularly egregious allegations of personal restraint and deprivation of personal rights" and limited the exception to such rare circumstances. Thus, in the cases following *Dry Creek,* the Tenth Circuit clarified that it was the unique facts of the case rather than the status of the plaintiff as a non-Indian that gave rise to the exception. *Nero, supra* (suggesting "that the exception outlined in *Dry Creek Lodge* is applicable only in cases with similar facts").

Although a host of plaintiffs have tried to sue tribes in federal courts by invoking the *Dry Creek* exception, the Tenth Circuit has so consistently rebuffed these attempts that it appears the *Dry Creek* exception may be limited to the unique facts of that case.

■■■ This court also rejects plaintiff's contention that because resort to, and a victory in, the Tribal Court forum has proven to be unavailing on a practical level, plaintiff's members have no forum and therefore under *Dry Creek* this court must exercise jurisdiction based upon "absolute necessity." What plaintiff is seeking to do is bypass an intra-tribal dispute by asking this court to order a federal agency to do what an arm of tribal

government has refused to do. Thus, having found that the authority of the Tribal Courts was insufficient to afford its members complete relief, it now seeks to "trump" the Business Council by having this court order any or all of the defendants to accomplish what the Business Council has previously refused to do.

However, just because plaintiff's members have not found that the Tribal Courts' orders are readily enforceable does not change the fact that there was an available forum. Unfortunately, it is not an unknown phenomenon for a plaintiff who makes full use of an available forum to redress grievances to find that a court's vindication of their rights is illusory.

For example, in the case *Worcester v. Georgia, supra,* it appears, on paper, that the Cherokee Tribe won a major victory against the encroachment by a state on their rights when Justice Marshall ruled that jurisdiction over the Cherokees belonged exclusively to the federal government and that Georgia had no power to pass laws affecting the tribe. The *Worcester* case is widely cited, see *Santa Clara,* 436 U.S. at 55, 98 S.Ct. at 1675, for the proposition that Indian tribes are "distinct, independent political communities, retaining their original natural rights" in matters of local self-government, and that the laws of a state have no force within Indian territory. However, this vindication of rights proved to be a hollow victory because the then-President of the United States ignored the decision and encouraged the State of Georgia to do likewise.[3]

Thus, the existence of, and resort to, a forum to redress alleged deprivation of rights does not always translate into actual enjoyment of those rights if there are countervailing political, social, economic and/or cultural forces at work.[4] In this case, plain-

**3.** Legend has it that President Andrew Jackson, a politician who reaped immense political benefit from his support of Indian "relocation," remarked, "John Marshall has rendered his decision, now let him enforce it." Alvin M. Josephy, Jr., 500 NATIONS 327–29 (1994); *United States v. Michigan,* 471 F.Supp. 192, 209 and 211 (W.D.Mich.1979). The next year the State of Georgia held a lottery of land owned by Chero-

kees and evicted the Cherokees. *Id.* These events culminated a few years later in the tragedy known as the "Trail of Tears." *Id.*

**4.** Another notable example is the United States Supreme Court's 1954 *Brown v. Board of Education,* decision which held unconstitutional the then-common practice of racially separate public schools. 347 U.S. 483, 495, 74 S.Ct. 686, 692,

tiff's position is that if the forum of the Tribal Court has what it perceives to be insufficient enforcement powers, then this court should step in and provide an additional forum. This court disagrees. There was an available forum; plaintiff's members made use of that forum. The matter of enforcement of their victory in that tribal forum is now an intra-tribal matter. The issue of how apparent conflicts between different institutions of the Shoshone Tribal government are resolved is so core to the independent sovereignty of the Shoshone Tribe that it must necessarily be always outside of this court's jurisdiction. See *Santa Clara*, 436 U.S. at 71 & n. 32, 98 S.Ct. at 1683 & n. 32 (noting the inappropriateness of interference by the federal judiciary with the sensitive matters of tribal traditions necessary to "a tribe's ability to maintain itself as culturally and politically distinct entity").

 Further, defendants have correctly pointed out that in this circuit, courts have consistently recognized that tribal membership is a sensitive issue closely connected to the sovereignty of the tribe. The relief sought by plaintiff's members would compel tribal membership for over 400 individuals and their progeny.[5] This court holds that such internal tribal affairs as membership and government are not appropriate subjects for the application of the *Dry Creek* exception. *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1460 (10th Cir.1989). As noted in *Santa Clara* "[tribal courts have repeatedly been recognized as appropriate forums for exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians.]" 436 U.S. at 65, 98 S.Ct. at 1680–81 (citations omitted). Further, non-judicial tribal institutions—such as tribal councils—are also recognized as competent law applying bodies. *White*, 728 F.2d at 1312–13 (citing *Santa Clara* ).

This court finds that plaintiff's allegations do not establish "absolute necessity" within

the meaning of *Dry Creek*. There has been abundant process that plaintiff's members have used to raise their interests in becoming enrolled members of the Eastern Shoshone Tribe. Any resolution of their struggle to have the Business Council follow the Tribal Courts' Orders involves the structure of Tribal government and internal balance of power in Tribal government. The Tribe's sovereign immunity bars any interference by this court in such matters.

### 3. Tribal Defendants in Their Individual Capacity

 To the extent that defendants are sued in their individual capacity under § 1302(8), of the ICRA the court's decision in *Fletcher*, addresses that issue:

Tribal sovereign immunity does not protect an official against individual-capacity claims. *Santa Clara*, 436 U.S. at 59, 98 S.Ct. at 1677. However, § 1302(8) of the Indian Civil Rights Act speaks only to tribal action, see *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 934–35 (10th Cir.1975), and does not authorize a cause of action for declaratory or injunctive relief against either the Osage Tribe or its officers in federal court, see *Santa Clara Pueblo*, 436 U.S. at 59–72, 98 S.Ct. at 1677–84.

116 F.3d 1315 at 1324 n. 12.

 Thus, because § 1302(8) of the ICRA speaks only to tribal action, it cannot from the basis for suit against the members of the Business Council in their individual capacity.

### 4. Jurisdiction under 28 U.S.C. § 1343

As a final matter, plaintiff suggests that if this court finds lack of subject matter jurisdiction, it may amend its First Amended Complaint to allege jurisdiction under 28 U.S.C. § 1343(a)(4).

---

98 L.Ed. 873. Sadly, the *Brown* decision's holding that the practice violated the students' constitutional right to equal protection of laws could not end the problem addressed therein which continues to confront the nation and its courts to this day.

5. Tribal membership is approximately 5,000 individuals.

Plaintiff contends that § 1343(a)(4) confers jurisdiction on the district courts over federal laws protecting civil rights, including the ICRA. In support of this position, plaintiff relies on *Ramey Construction Co.*, 673 F.2d at 319 and n. 3 (citing *Howlett v. Salish and Kootenai Tribes*, 529 F.2d 233, 236 (9th Cir. 1976); *Janis v. Wilson*, 521 F.2d 724, 726 (8th Cir.1975); *Shubert Construction v. Seminole Tribal Housing Authority*, 490 F.Supp. 1008, 1009–10 (S.D.Fla.1980)).

 reliance upon § 1343(a)(4) is misplaced. The *Janis* and *Howlett* cases predate *Santa Clara* and to the extent they differ from *Santa Clara* they are no longer good law. In *Shubert Construction*, the court held that in light of *Santa Clara* it had no jurisdiction pursuant to § 1343 and the ICRA. *Id.* Similarly, the court in *Ramey Construction* acknowledged that neither §§ 1334(a)(4) nor 1331 provided jurisdiction over claims for damages or for injunctive relief pursuant to the ICRA.

> In *Santa Clara* ..., the Supreme Court clarified the meaning and effect of § 1302 of the ICRA. The Court made clear that, aside from authorizing writ of habeas corpus actions as provided in § 1303, the ICRA leaves tribal sovereignty immunity intact.

673 F.2d at 319 (underlined emphasis added).

Even if the plaintiffs were permitted to amend their first amended complaint to allege jurisdiction under § 1343(a)(4), they would face similar problems due to the intratribal nature of the dispute and the sovereign immunity of the tribe and its officers, which has not been disturbed by Congress. Thus, allowing plaintiff to amend its complaint to allege jurisdiction under § 1343 and the ICRA would be futile because under *Santa Clara* there is no non-habeas relief available pursuant to the ICRA.

## B. FEDERAL DEFENDANTS

The Federal Defendants contend that this court lacks subject matter jurisdiction and that plaintiff fails to state a claim for which relief can be granted. They contend that this court is not an appropriate forum to decide for the Eastern Shoshone Tribe who is or is not a member of the Tribe. They contend that the issue of tribal membership and the division of power between the Tribal Court and its Business Council is an intratribal dispute over which the federal courts have no jurisdiction. Plaintiff contends that this court has jurisdiction over the Federal Defendants pursuant to the *Dry Creek* exception to sovereign immunity and 25 U.S.C. § 163.

### 1. Dry Creek Revisited

 This court can find no authority that would allow the *Dry Creek* exception to the Tribe's sovereign immunity to constitute the basis for a cause of action against the Federal Defendants. Further, as noted above, the court has expressly found that the *Dry Creek* exception does not apply to plaintiff's allegations.

### 2. 25 U.S.C. § 163

Plaintiff's fifth cause of action, added by its Amended Complaint, asserts jurisdiction under 25 U.S.C. § 163, which provides:

> The secretary of the Interior is hereby authorized, whenever in his discretion such action would be for the best interest of the Indians, to cause a final roll to be made of the membership of any Indian tribe....

Plaintiff alleges that the failure of the Secretary to make a final roll represents a failure to take a merely ministerial step in accordance with established law.

 In *Prairie Band of Pottawatomie Tribe of Indians*, this argument was expressly rejected in a case where plaintiffs invoked the court's mandamus powers [28 U.S.C. § 1361] to seek declaration of rights determining eligibility to award payable by Congress to Indians.

> Certainly it cannot be seriously argued that giving the Secretary authority to approve tribal action is a specific ministerial duty owed individually to the tribal members.
>
> The only statutory provision applicable is 25 U.S.C. § 163. But this <u>certainly does not place a ministerial duty upon the Secretary which he owes to the individual members of the tribe.</u> In fact it specifical-

ly recites that the Secretary may in his discretion authorize a membership roll to be made of a tribe and this he has authorized to be done. The second clause of the section then grants the Secretary approval authority on the roll after it has been made which the facts show has not as yet been completed due in large part to the present action. Once again, <u>we fail to see how approval authority can be classified as a pure ministerial function.</u>

355 F.2d at 367 (underlined emphasis added).

Thus, this court finds no merit in plaintiff's argument that 25 U.S.C. § 163 creates a duty by the Secretary which he owes to plaintiff's members individually. Because there is no duty, the court need not reach plaintiff's contention that a cause of action is implied for a violation of such a duty.

### 3. Federal Question Jurisdiction

 Section 1331 of Title 28 United States Code provides for jurisdiction over "all civil action arising under the Constitution, laws or treaties of the United States." This section provides what is commonly referred to as "federal question" jurisdiction. However, "[f]or this court to exercise federal question jurisdiction there must a constitutional or federal statutory provision under which plaintiffs are aggrieved." *Western Shoshone Business Council v. Babbitt*, 1 F.3d 1052, 1058 (10th Cir.1993) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)).

Plaintiffs have cited no such statutory provision. As noted above, neither the ICRA nor 25 U.S.C. § 163 are statutes upon which a cause of action for damages or for injunctive relief can be maintained.

 Further, as indicated before, it is well settled that, unless expressly waived or affected by Congressional enactment, the Tribes have sovereign immunity over intra-tribal disputes such as those involving tribal government and membership. *Santa Clara, supra.* In this circuit, this rule has been invoked in *Motah v. United States*, 402 F.2d 1 (10th Cir.1968) (no federal question jurisdiction over suit involving a tribal election to determine whether or not a separate constitution should be created for the Comanche tribe in Oklahoma); *Prairie Band of Pottawatomie Tribe of Indians v. Puckkee*, 321 F.2d 767 (10th Cir.1963) (a dispute over tribal membership and entitlement to Congressionally appropriated funds); *Prairie Band of Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir.1966), *cert. denied,* 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966) (no subject matter jurisdiction over suit involving exclusion from tribal role for distribution of funds); *Martinez v. Southern Ute Tribe*, 249 F.2d 915 (10th Cir.1957), *cert. denied,* 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (intra-tribal disputes over membership do not present a federal question) and most recently in *Fletcher, supra* (federal court had no subject matter jurisdiction to proceed in action challenging validity of franchise restriction and for a declaration on the validity of tribe's constitution).[6]

The court holds that enrollment and membership in the Eastern Shoshone Tribe raises intra-tribal issues where the Tribe enjoys sovereign immunity thereby depriving this court of subject matter jurisdiction.

## VI. CONCLUSION AND ORDER

Defendants Business Council and its members in their individual capacity have sovereign immunity from suit in federal court. The *Dry Creek* exception does not apply. The court lacks subject matter jurisdiction over a suit brought against the defendants in their individual capacities under the Indian Civil Rights Act. Section 163 of 25 U.S.C. does not establish any duty owed by the Federal Defendants to the individual members of plaintiff. The court lacks subject matter jurisdiction over the suit against the Federal Defendants under the ICRA and 25 U.S.C. § 163.

Accordingly, it is therefore

---

**6.** However, as noted in the Government's first brief, a tribe's authority to determine membership is "qualified" with respect to distribution of tribal funds over which the Government maintains control. *Martinez v. Southern Ute Tribe of Southern Ute Reservation,* 249 F.2d 915 (10th Cir.1957).

ORDERED that the Motion to Dismiss filed by Federal Defendants (Bruce Babbitt, Secretary of Interior and the Bureau of Indian Affairs) is **GRANTED**. It is further

ORDERED that the Motion to Dismiss filed by the Tribal Defendants (the Eastern Shoshone Tribal Business Council and its members in their individual and official capacities, John Washakie, Vernon Hill, Bud McAdams, Mike Lajeunesse, Ivan Posey and John Wadda) is **GRANTED**. It is further

ORDERED that plaintiff's Amended Complaint is **DISMISSED**.