**Shawn C. PRIDE, Plaintiff–Counter–Defendant–Appellant,**

v.

**Various John DOES, Defendants–Appellees,**

**Trooper Jan Lamb, Defendant–Counter–Claimant–Appellee.**

**Nos. 92–3193, 92–3233.**

United States Court of Appeals, Tenth Circuit.

June 15, 1993.

* Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

Casey R. Law (J. Thomas Marten, of Bremyer & Wise, P.A., McPherson, KS, with him on the briefs), of Bremyer & Wise, P.A., McPherson, KS, for plaintiff-counter-defendant-appellant.

Carl A. Gallaher (Nancy L. Ulrich, Asst. Atty. Gen., Topeka, KS, with him on the brief), Asst. Atty. Gen., Topeka, KS, for defendant-counter-claimant-appellee.

Before TACHA, McWILLIAMS, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

Shawn C. Pride appeals the district court order granting summary judgment for the defendants on his claim for violation of his civil rights under 42 U.S.C. § 1983. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

On the evening of September 9, 1988, Shawn Pride ("Pride"), his brother Mark Pride, and his friend Stuart Whitenack visited the Kansas State Fair in Hutchinson, Kansas. At the time, Pride was a twenty-one-year-old student at Wichita State University. The defendant, Jan Lamb, was a Kansas State Trooper on plainclothes duty that night at the fair.

After visiting several drinking establishments, Pride and his companions were arrested for disorderly conduct, handcuffed, and taken to the highway patrol office.[1] At the trooper's office, Pride was seated with his hands handcuffed behind his back but in front of the back of the chair. The parties agree that Lamb attempted to question Pride regarding the incident at the fair and eventually applied force to his neck. Other than those bare facts, however, the parties present vastly different accounts of the events that night.

According to Lamb, Pride became loud and obnoxious when she attempted to question him about the altercation at the fair. Lamb alleges that Pride threatened to "kick her f_____ dyke ass" and started forward out of his seat. She further alleges that Pride was intoxicated and had a threatening and intense expression on his face. Lamb claims that she placed her left hand around Pride's neck in order to restrain him from lunging toward her. Lamb characterizes the pressure on Pride's neck as modest and estimates that it lasted seven to eight seconds.

Pride's version of the facts is quite different. According to Pride, he did not start forward out of his chair or otherwise physically threaten her. Pride also denies using any "loud profanity." He does admit, however, that he verbally resisted Lamb's questioning, at one point saying to Lamb, "Here comes the lady with the big badge," and asking, "I bet you hate men, don't you?" He alleged that Lamb responded by stating, "I'll show you how I hate men," and choking Pride by placing her left hand around his neck for approximately thirty seconds. Pride claims that the "unpleasant, painful

---

1. For purposes of this appeal, we outline only the essential facts. The district court opinion provides more detail. *See Pride v. Kansas Highway Patrol*, 793 F.Supp. 279, 280–81 (D.Kan.1992).

pressure" to his neck "reduce[d], though not entirely destroy[ed], his ability to breathe and speak." Accordingly, Pride alleges that he attempted to scream but could speak only in muffled tones the words "She's choking me." After the alleged choking incident, Pride requested but did not receive medical treatment from the police, who stated that they did not believe that he had been injured. Although the police released Pride that evening, he did not seek medical treatment until several days later.

Pride sued Lamb under 42 U.S.C. § 1983 alleging the use of excessive force. Pride's claimed injuries included neck bruises and "psychological distress and humiliation." The district court granted Lamb's motion for summary judgment based on qualified immunity, finding that no constitutional violation occurred because Lamb's conduct was objectively reasonable. The court stated that, although "the plaintiff did not attempt to lunge forward at the defendant, the defendant believed that he was attempting to do so, and felt threatened." 793 F.Supp. at 281. The court alternatively concluded that, even if a constitutional violation had occurred, Lamb was immune from liability because her conduct was reasonable under the law clearly established at the time of the incident. *Id.* at 282–83. The court then dismissed Pride's pendent state claim for battery. *Id.* at 284.

## II. Jurisdiction

As a threshold matter, we must examine our jurisdiction to hear this case. It is well-settled that the Eleventh Amendment bars § 1983 civil actions against the states but permits such suits brought against state officials sued in their individual capacities. *Hafer v. Melo,* —— U.S. ——, ——, 112 S.Ct. 358, 364–65, 116 L.Ed.2d 301 (1991). Pride named the Kansas Highway Patrol, Trooper Jan Lamb, and Various John Does as defendants. Lamb argues for the first time on appeal that Pride has run afoul of the Eleventh Amendment because his pleadings fail to specify that he is suing Lamb in her individual capacity. We reject this argument.

When a defendant asserts Eleventh Amendment immunity, the plaintiff's claims must be "given the favorable reading required by the Federal Rules of Civil Procedure." *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). In discerning whether a lawsuit is against a defendant personally or in his official capacity, the caption may be informative but clearly is not dispositive. Rather, the Supreme Court has stated that "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (quoting *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)). Thus, where the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability. *See Houston v. Reich,* 932 F.2d 883, 885 (10th Cir. 1991); *see also Price v. Akaka,* 928 F.2d 824, 828 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991); *Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir.1988); *Shockley v. Jones,* 823 F.2d 1068, 1071 (7th Cir.1987).

Although Pride failed to specify that he was suing Lamb in her individual capacity, it is clear from both the pleadings and the course of litigation that Pride was doing so.[2] First, Pride sued for punitive damages, which are not available against the state. *See, e.g., Shabazz,* 852 F.2d at 700 (request for punitive damages indicates personal nature of lawsuit). Second, Lamb raised the defense of qualified immunity. *See, e.g., Conner v. Reinhard,* 847 F.2d 384, 394 n. 8 (7th Cir.) (qualified immunity indi-

---

**2.** The government contends that the lawsuit must have been against Lamb in her official capacity because the pleadings state that she "acted as a state trooper." This argument, however, "confuses the capacity in which a defendant is sued with the capacity in which the defendant was acting when the alleged deprivation of rights occurred. The former need not coincide with the latter." *Price,* 928 F.2d at 828.

cates action was for individual capacity), *cert. denied,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); *Lundgren v. McDaniel,* 814 F.2d 600, 604 (11th Cir.1987) (same). Finally, although Lamb left the employ of the state, Pride maintained the suit against her rather than amending to substitute the current state officer. Although an Eleventh Amendment defense is jurisdictional and may be raised for the first time on appeal, *see Garcia v. Board of Educ.,* 777 F.2d 1403, 1405 (10th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986), the government cannot avoid the implications of its own conduct simply because the pleadings are ambiguous. In this case, its failure to raise the Eleventh Amendment argument as to all defendants clearly indicates that it believed that Lamb was being sued individually.[3] Therefore, Lamb's Eleventh Amendment defense must fail.

### III. Section 1983 Claim

■ We review a grant of summary judgment de novo, applying the same standards used by the district court. *Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419, 420 (10th Cir.1990). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When examining this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). As to those issues for which it carries the burden of proof, the nonmoving party must plead specific facts demonstrating a genuine issue for trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Because Officer Lamb raised the defense of qualified immunity, it was incumbent upon Pride to "show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law." *Woodward v. City of Worland,* 977 F.2d 1392, 1396 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). In so doing, the plaintiff must offer more than conclusory and nonspecific allegations in order to overcome a motion for summary judgment based on qualified immunity. *Pueblo Neighborhood Health Centers v. Losavio,* 847 F.2d 642, 650 (10th Cir.1988).

■ In reviewing a § 1983 excessive force claim, we begin by "identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Conner,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). In *Austin v. Hamilton,* 945 F.2d 1155 (10th Cir.1991), we concluded that the Fourth Amendment provides constitutional protection from excessive force after a warrantless arrest but before judicial determination of probable cause to arrest. *Id.* at 1160; *see also Frohmader v. Wayne,* 958 F.2d 1024, 1026 (10th Cir.1992).[4] Under that standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872.

■ We judge the reasonableness of the force used not with the "20/20 vision of hindsight" or from the serenity of chambers but from the perspective of the officer on the scene, allowing for the split-second nature of most law enforcement decisions. *Id* at 396–

---

**3.** The government does not allege that Pride's ambiguous pleadings failed to give it notice that Lamb was being sued in her personal capacity. First, the qualified immunity defense unequivocally demonstrates that "notice" had been given. In addition, the government stated at argument that, while it had raised Eleventh Amendment immunity in 1989 as to the Kansas Highway Patrol, it elected not to raise the issue as to Officer Lamb at that time because it feared that

the court would grant Pride leave to amend the complaint to specify that Lamb was being sued in her individual capacity.

**4.** Although the incident in this case occurred prior to the Supreme Court's decision in *Graham,* we apply the objective reasonableness standard retroactively. *See Austin,* 945 F.2d at 1160.

97, 109 S.Ct. at 1872. From that vantage point, we pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. at 1872; *see also Dixon v. Richer*, 922 F.2d 1456, 1462–63 (10th Cir. 1991).

We agree with the district court that Officer Lamb's conduct was objectively reasonable. Pride had been arrested for disorderly conduct based on an altercation at the State Fair. Before attempting to question Pride, Lamb had been told that he had been drinking and that he was suspected of slapping a barmaid at a beer tent. Lamb observed that Pride was intoxicated and combative. In her uncontroverted affidavit, Lamb stated that it was her experience that intoxicated persons often became violent and that on at least four prior occasions an intoxicated driver had attacked her during an attempted arrest. Finally, Lamb testified that she perceived that Pride was acting in a threatening manner. Lamb and other individuals testified that Pride "started out of his chair" at Officer Lamb. In addition, Lamb testified that Pride had a very intense and threatening look on his face when he moved at her.

Pride does not contest the bulk of these facts. He does not deny that he was arrested for disorderly conduct following the altercation at the fair, that Lamb believed that he had slapped the barmaid, or that he was acting intensely. He *admits* that he could "feel" the beer he had consumed and that he resisted her questioning and made numerous rude remarks. The only allegation that Pride flatly contests is that he was starting out of his chair.

In this case, the relevant question for the court is not whether Pride acted in a threatening manner but whether Officer Lamb reasonably believed so. *See Hunter v. Bryant*, —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589. Pride's pleadings, while direct-

ly contesting certain factual issues, simply fail to demonstrate that Lamb acted unreasonably in response to the perceived threat to her safety and the safety of others in the room. Officer Lamb encountered an intoxicated and provocative individual who was in custody for disorderly conduct. When that individual acted in a manner which she reasonably perceived as threatening, she used moderate force to restrain him.[5] The record reveals that that individual sustained minimal immediate injury and no permanent injury whatsoever as a result of that application of force. Under these circumstances, we hold that Officer Lamb's conduct was objectively reasonable. Because Pride failed to show that Lamb violated his Fourth Amendment rights, his § 1983 claim was properly dismissed on summary judgment.

Finally, Pride appeals the dismissal of his supplemental state claims. The district court dismissed those claims after dismissing Pride's jurisdictionally predicate federal claims. Because we affirm the dismissal of Pride's federal claims, we find no error in the dismissal of his state claims.

**AFFIRMED.**

---

5. We emphasize that this is not a case like *Frohmader*, where the plaintiff presented neither violent circumstances nor verbal provocation, 958 F.2d at 1026, or *Dixon*, where the passive plaintiff was kicked, beaten, and choked by two police officers during a *Terry* frisk. 922 F.2d at 1463.