**E.F.W. and A.T.B., Plaintiffs,**

**v.**

**ST. STEPHEN'S MISSION INDIAN HIGH SCHOOL; Shoshone and Arapaho Tribal Social Services (SATSS); R. Kelly Proctor; Bia Police Officers Lewis Mosqueda and Sergeant Will Falls Down; Fremont Counseling Services; Lisa Cook–Gambler, M.A. as an employee of Fremont Counseling Services and individually; Thomas S. Kennah; Darrell L. Lone Bear, Sr.; Susan Donnell, M.D.; Kelly Elertson; Anup Sidhu, M.D. and other persons designated as John Does 1–5, Defendants.**

No. 98–CV–283–J.

United States District Court, D. Wyoming.

May 4, 1999.

Donald James Rissler, Central Wyoming Law Associates, Riverton, WY, John W Whitehead, Rutherford Institute, Charlottesville, VA, for E.F.W., A.T.B., plaintiffs.

Stuart R Day, Williams Porter Day & Neville, Casper, WY, for St Stephen's Indian High School, R Kelly Proctor, Kelly Elertson, defendants.

John C Schumacher, Law Office of John Schumacher, Fort Washakie, WY, Richard M Berley, Ziontz Chestnut Varnell Berley & Slonim, Seattle, WA, for Shoshone and Arapahoe Tribal, Social Services (SATSS), Thomas S Kennah, Darrell Lone Bear, Sr., defendants.

Nicholas Vassallo, U.S. Attorney's Office, Cheyenne, WY, for Louis Mosquea, William Falls Down, Sgt, Susan Donnell, MD, defendants.

Judith A Studer, Schwartz Bon Walker & Studer, Casper, WY, for Lisa Cook–Gambler, Fremont Counseling Services, defendants.

F James Gallo, Gallo Reinan & Marek, Denver, CO, for Anup Sidhu, MD, defendant.

## ORDER GRANTING MOTION OF TRIBAL DEFENDANTS TO DISMISS AND DENYING PLAINTIFFS' MOTION PURSUANT TO FED.R.CIV.P. 56(f)

JOHNSON, Chief Judge.

This matter is before the court on the Motion of Tribal Defendants to Dismiss filed by defendants Shoshone and Arapaho Tribal Social Services (SATSS), Thomas S. Kennah, and Darrell L. Lone Bear, Sr. Plaintiffs oppose the Motion and move for additional discovery pursuant to Fed. R.Civ.P. 56(f).

Plaintiff E.F.W. is the mother of plaintiff A.T.B. Complaint at ¶ 2. Plaintiffs are enrolled members of the Northern Arapaho Tribe. *Id.* at ¶¶ 1 and 2. Plaintiff A.T.B. was a minor and was attending high school at the time of the events in question. *Id.* at ¶¶ 2 and 22. Plaintiffs bring their Complaint pursuant to 42 U.S.C. §§ 1983 and 1985 and allege the defendants violated their civil rights. The alleged violation arose in connection with the removal of A.T.B. from her mother's custody and placement in a psychological care facility as a suicide risk and the filing and investigation of charges that E.F.W. abused and/or neglected her daughter. The abuse/neglect charges were filed by SATSS in the Arapaho and Shoshone Tribal Court, where the matter was adjudicated. *Id.* at ¶¶ 56–59 and 63–64, 73, 77–78. Plaintiffs allege this court has jurisdiction

pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (jurisdiction over civil rights claims) and 42 U.S.C. §§ 1983 and 1985.

Defendants SATSS, Kennah and Lone Bear (the Tribal defendants), move to dismiss for lack of jurisdiction. They contend that Indian tribes, including tribal agencies and officials, have sovereign immunity from suit which is not waived. They contend that a federal court has no jurisdiction over plaintiffs' claims under the Federal Civil Rights Statutes, 42 U.S.C. §§ 1983 or 1985, the Indian Civil Rights Act, 25 U.S.C. § 1302, or under 28 U.S.C. § 1343.

This court has previously discussed the standard for consideration of a motion to dismiss for lack of jurisdiction in *Ordinance 59 Ass'n v. Babbitt,* 970 F.Supp. 914, 917–18 (D.Wyo.1997), *aff'd Ordinance 59 Ass'n v. U.S. Department of the Interior Secretary,* 163 F.3d 1150 (10th Cir.1998).

As a preliminary matter the court will address the proper standard for consideration of the Motions to Dismiss. Written documents that are attached to the complaint as an exhibit are considered part of the complaint and may therefore be considered in connection with a motion to dismiss under Rule 12(b). *Hall v. Bellmon,* 935 F.2d 1106, 1112 (10th Cir.1991) (citing Fed.R.Civ.P. 10(c)).

A motion to dismiss for failure to state a claim is brought under Fed.R.Civ.P. 12(b)(6); a motion to dismiss for lack of subject matter jurisdiction is brought only under Fed.R.Civ.P. 12(b)(1). *State Farm Mutual Automobile Ins. Co. v. Dyer,* 19 F.3d 514, 518 n. 8 (10th Cir. 1994). A dismissal for "lack of subject matter jurisdiction is not on the merits [and] its res judicata effect is limited to the question of jurisdiction." *Id.*

This court cannot grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt the plaintiff could prove no set of facts supporting the claim which would entitle plaintiff to relief. In other words, the court assess-es whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Bintner v. Burlington Northern, Inc.,* 857 F.Supp. 1484, 1487 (D.Wyo.1994). The court presumes the complaint's allegations are true and construes them most favorably to plaintiff. *Id.*

Recently the Tenth Circuit has noted that in a case where an Indian tribe has sovereign immunity, the federal district court lacks subject matter jurisdiction over the case, which means that the motion to dismiss on the basis of the Tribe's sovereign immunity is a Rule 12(b)(1) matter. *Fletcher v. United States,* 116 F.3d 1315, 1319–20 (10th Cir. 1997) *cf. Union Pacific Railroad Co. v. Burton,* 949 F.Supp. 1546, 1552 (D.Wyo. 1996) (motion to dismiss on the basis of Eleventh Amendment immunity may be under various procedural mechanisms, including a motion under Fed.R.Civ.P. 12(b)(1)).

The standards for a trial court's consideration of matters under Rule 12(b)(1) has been fully explained in *Holt v. U.S.,* 46 F.3d 1000 (10th Cir.1995).

Generally Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such

instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 56 motion when resolution of the jurisdictional question is intertwined with the merits of the case.

*Id.* at 1002–03 (citations omitted).

Plaintiff urges this court to hold an evidentiary hearing on numerous matters that it contends are important factual issues that are relevant to deciding the motions to dismiss. This court finds that an evidentiary hearing is unnecessary on the issues of sovereign immunity and lack of subject matter jurisdiction. Although the defendants attach various exhibits to their motions to dismiss, the court does not construe the motions as relying on matters outside of the complaint and the exhibits thereto. The defendants' exhibits are generally aimed at showing there is another side to the conflict ..., but are not necessary to the court's decision on the motions to dismiss. What is important is that defendants do not dispute the complaint's factual allegations which are dispositive for the motions to dismiss. Accordingly, the court will base its decision on the facts as alleged in the Amended Complaint and in the exhibits attached to the Complaint and the Amended Complaint. The court presumes those allegations to be true for the purposes of these motions only.

*Id.* at 917–18.

Resolution of the jurisdictional question is intertwined with the merits of the case where subject matter jurisdiction is "dependent on the same statute which provides the substantive claim in the case." *Holt,* 46 F.3d at 1003.

Even if this court construed the motion as a Rule 12(b)(6) motion, such a motion need not automatically be converted to a motion for summary judgment "simply because one party submits additional matters in support of or in opposition to the mo-

tion." *State of Mo. ex. rel Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1106 (8th Cir.1999) *accord Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.1987). "Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss." *State of Mo. ex. rel Nixon v. Coeur D'Alene Tribe,* 164 F.3d at 1106 (citing *Papasan v. Allain,* 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

In this case plaintiffs have proceeded as if the Tribal defendants' Motion to Dismiss is converted to a Motion for Summary Judgment. Accordingly, they filed a Motion Pursuant to Fed.R.Civ.P. 56(f) asking the court to deny summary judgment and grant additional discovery. They contend that the following issues of fact must be determined before the court can rule on the Motion to Dismiss: whether defendants Lone Bear and Kennah followed SATSS Rules & Regulations in investigating the child abuse/neglect charges; whether because SATSS was created pursuant to a Tribal–State Intergovernmental Agreement it is a "quasi-State of Wyoming agency"; whether SATSS was required to follow the Wyoming Department of Family Services (DFS) Rules and Regulations because those Rules were adopted by SATSS; and if so, whether defendants followed the DFS Rules.

The court need not address the merits of plaintiffs' civil rights claims to determine jurisdiction in this case. The relevant jurisdictional facts are not disputed. Although plaintiffs dispute the legal *effect* of the Tribal–State Agreement, the text of that Agreement is not disputed. Similarly, the content of the Tribal Children's Code and of the pleadings from the Tribal Children's Court file on the abuse charges are not disputed. Plaintiffs refer to those pleadings in their Complaint and attached several of those pleadings to their Complaint. The relevant jurisdictional facts are generally those as alleged in the Complaint. Because the court need not ad-

dress the merits of plaintiffs' claims, it need not address most of the issues upon which plaintiffs seek additional discovery. The court will address the issue of the legal effect of the Agreement. However, because the text of that Agreement is not in dispute, discovery is not required. Accordingly, the court will deny plaintiffs' Motion Pursuant to Fed.R.Civ.P. 56(f).

For the purposes of the Motion to Dismiss, the court presumes all well-pleaded facts in the Complaint are true. Plaintiffs' Complaint makes the following allegations involving the Tribal defendants:

7. Defendant, Shoshone and Arapaho Tribal Services [hereafter referred to as SATSS], is an agency of the Shoshone and Arapaho Tribes.

8. [Defendant] Lisa Cook–Gambler derived her authority to act pursuant to Wyoming Statutory Law and pursuant to a Tribal/State of Wyoming Intergovernmental agreement [hereafter referred to as the Agreement] for the Division of Social Services, State of Wyoming, dated on or about November, 1996.

\* \* \* \* \* \*

13. Pursuant to said Agreement, the Eastern Shoshone and Northern Arapaho tribes, by and through the joint business counsel, created a tribal agency known as SATSS.

14. Thomas S. Kennah and Darrell L. Lone Bear, Sr. were at all times relevant herein employees of SATSS.

\* \* \* \* \* \*

17. Plaintiff E.F.W. and Plaintiff A.T.B. have a constitutionally protected liberty interest to fully associate with their immediate family members free from capricious interference and intrusion by officials and employees from the State of Wyoming, Tribal Authorities or employees or the United States Government Authorities and employees and other agencies.

18. Plaintiff E.F.W. and Plaintiff A.T.B. also have a recognized due process right provided to them through the Rules and Regulations Governing Child Protective Services promulgated pursuant to the Agreement of November, 1996 and subsequent agreements, if any. Likewise Plaintiffs have a recognized due process right established as part of the child protective statutes for the State of Wyoming, W.S. § 14–3–401 through 14–3–439.

19. As members of the Northern Arapaho Tribe, Plaintiffs have constitutionally protected rights pursuant to the United States Constitution and the Indian Bill of Rights Act, 25 U.S.C. § 1302. Among these rights is the right to be free from any denial of their equal protection and due process rights, liberty and property rights.

20. Said statutes, rules and regulations, together with the Agreement, were to be administered by Defendants ... Thomas S. Kennah, SATSS ... Darrell L. Lone Bear, Sr. and others.

21. At all times relevant to the Complaint herein, Defendants and each of them acted under color of law as fully described herein.

22. On or about November 13, 1996, Plaintiff A.T.B. was taken from St. Stephen's Indian High School located on the Wind River Indian Reservation without notice to her sole living parent, Plaintiff E.F.W., by Louis Mosqueda, a BIA dispatcher, in a BIA police car.

\* \* \* \* \* \*

25. R.I.W. informed Plaintiff E.F.W. that her daughter Plaintiff A.T.B., was taken from St. Stephen's Indian High School by the BIA Police Department.

\* \* \* \* \* \*

29. After Plaintiff E.F.W. contacted St. Stephen's Indian High School she contacted the BIA Police Depart-

ment and spoke with Sergeant William Falls Down who informed Plaintiff E.F.W. that her daughter, without the permission of the mother, was taken to Pineridge Hospital at Lander Valley in Lander, Wyoming. Sergeant William Falls Down further advised Plaintiff E.F.W. that she should contact Thomas S. Kennah of the SATSS.

\* \* \* \* \* \*

43. .... Unbeknownst to plaintiff E.F.W. at this time [November 14, 1996] Thomas S. Kennah, along with his supervisor, Darrell L. Lone Bear, Sr., had submitted a statement of child abuse/neglect allegations, but said the statement was not served upon plaintiff E.F.W. until November 18, 1996.

\* \* \* \* \* \*

46. Later that afternoon on November 15, 1996, Thomas S. Kennah finally called plaintiff E.F.W. and told plaintiff E.F.W. that plaintiff A.T.B. was in Pineridge Hospital at Lander Valley and he further said there was an investigation on plaintiff E.F.W. for allegations of abuse.

\* \* \* \* \* \*

63. Plaintiff E.F.W. attended Court at 11:00 a.m. on November 19, 1996 at the designated time. Neither Thomas S. Kennah nor [the Tribal prosecutor] appeared on time and thereafter, the Court dismissed the Abuse Petition with prejudice.

64. On November 19, 1996, after the temporary protective and placement hearing was dismissed with prejudice, Thomas S. Kennah, with the authorization of Darrell L. Lone Bear, Sr., met with plaintiff E.F.W. and told her words to the effect that she had to sign a voluntary placement agreement, attached hereto, or SATSS would re-file the abuse allegations or take whatever measures necessary to keep Plaintiff A.T.B. in Pineridge Hospital at Lander Valley until SATSS could make a case against plaintiff E.F.W.

65. Under duress and threats, plaintiff E.F.W. signed a Voluntary Placement Agreement on November 19, 1996, agreeing to place plaintiff A.T.B. with [a nonparty]. This Voluntary Placement Agreement was authorized by Thomas S. Kennah, Darrell L. Lone Bear, Sr., and signed by plaintiff E.F.W., along with a case plan of the same date signed by Thomas S. Kennah, Darrell L. Lone Bear, Sr. and plaintiff E.F.W.

\* \* \* \* \* \*

73. On January 2, 1997, plaintiff E.F.W. finally received a Notice of Conclusion from SATSS alleging that the child abuse allegations were substantiated and that Plaintiff E.F.W.'s name would be added to the Wyoming Abuse & Neglect Central Registry.

\* \* \* \* \* \*

*Count I—Cause of Action for Violation of Civil Rights 42 U.S.C. § 1983*

\* \* \* \* \* \*

85. Defendants ... Thomas S. Kennah, Darrell L. Lone Bear, Sr., ... under color of State of Wyoming law, intentionally and unlawfully interfered with Plaintiff E.F.W. and Plaintiff A.T.B.'s rights to associate with their immediate family members and to be free from capricious interference in the following ways ...

\* \* \* \* \* \*

87. Plaintiff E.F.W. and plaintiff A.T.B. have Constitutionally protected Liberty interests that cannot be deprived without due process of law under Amendment Five of the United States Constitution and (¶¶ 2)(4)(8) of the Indian Bill of Rights Act, 25 U.S.C. § 1302.

\* \* \* \* \* \*

89. Defendants ... Thomas S. Kennah, Darrell L. Lone Bear, Sr., ... under color of law intentionally and maliciously acted in concert and separately to deprive plaintiff E.F.W. and plaintiff A.T.B. of their Liberty and Due Process rights and other Constitutional Rights, described above, and their right to be free from seizure and ...

*Count II—Deprivation of Due Process According to 42 U.S.C. § 1983*

\* \* \* \* \* \*

91. In addition to the individual liberty interest heretofore set forth plaintiffs have protected Due Process rights connected with child abuse allegations initiated by SATSS as provided in W.S. § 14–3–401 through 14–3–459 and other Wyoming Statutes and the Tribal Code not otherwise mentioned herein together with 42 U.S.C. § 1983 and other federal statutes designated to protect the due process and liberty rights of Americans.

92. Defendants and each of them, failed to act as reasonable government officials in failing to see that the due process rights of plaintiff E.F.W. and plaintiff A.T.B. were protected.

\* \* \* \* \* \*

*Count III—1985 Claims*

94. Defendants Thomas S. Kennah and Darrell L. Lone Bear, Sr. acted in concert and without authority when they forced plaintiff E.F.W. to sign said consent decree under threats of prosecution and wilfully and intentionally deprived plaintiff E.F.W. of right to counsel and other Due Process rights.

95. Thomas S. Kennah and others unknown at this time, acted in concert and without authority when they maliciously filed a child abuse petition against plaintiff E.F.W. Defendants knew or should have known

said allegation was not supported in law or in fact.

\* \* \* \* \* \*

97. In doing the above described things, Defendants and each of them, were conspirators, engaged in a scheme of conspiracy designed and intended to deny and deprive plaintiffs of their liberty interest to freely associate with family members and interfere with plaintiffs' due process rights guaranteed to them under the U.S. Constitution, as conferred to plaintiffs by the Indian Bill of Rights Act and as provided to plaintiffs E.F.W. and A.T.B. by the Tribal Code.

\* \* \* \* \* \*

Complaint at 2–16.

In addition to the above, the Complaint alleges that E.F.W. attempted unsuccessfully to contact defendant Kennah several times. She also alleges that she was deliberately not informed that school and Tribal employees believed her daughter was allegedly suffering serious problems and considering suicide; that the hospital refused to let her speak to her daughter; and that despite her persistent efforts to all Tribal and Federal officials she went to for information and help she was unable to speak to her daughter or obtain timely information about the abuse/neglect charges. She alleges she did not receive the timely hearing afforded parents under Wyoming Statutes and that the notice of hearings she did receive did not comply with various rules and regulations. Plaintiffs seek economic and compensatory damages, attorneys fees and punitive damages.

The Tribal defendants move to dismiss for lack of jurisdiction because they contend Indian tribes, including their agencies and employees acting in their official capacity, have sovereign immunity from suit in federal court. Further, the Tribal defendants contend that plaintiffs fail to allege that defendants Kennah and Lone

Bear were acting under the color of "state" law where they acted under the authority of the Tribal Code. In addition, the Tribal defendants contend that defendants Lone Bear and Kennah are sued in their official capacity only.

In addition to the exhibits attached to the Complaint the court relies upon the Tribal–State Intergovernmental Agreement for the Provision of Social Services to Children of the Wind River Reservation (the Tribal–State Agreement) submitted by plaintiffs and Title III of the Law and Order Code of the Shoshone and Arapaho Tribes of the Wind River Indian Reservation, Wyoming (the Tribal Children's Code), submitted by the Tribal defendants, and copies of the pleadings from the Tribal Court's abuse/neglect proceedings.

The court does not find the affidavits of plaintiffs E.F.W. and A.T.B. and of defendant Kennah to be relevant to the jurisdictional issue and therefore need not consider them for purposes of the Motion. These affidavits generally relate to the merits of plaintiffs' claims of deprivation of civil rights and the Tribal defendants' contention they acted properly and in good faith.

The Tribal–State Agreement provides as follows:

(A) *Parties.* The Parties to this contract are the Eastern Shoshone and Northern Arapaho Tribes by and through the Joint Business Council (JBC), ... and the State of Wyoming, Department of Family Services (DFS) ...

(B) *Philosophy & Purpose.* The parties agree to perform their respective duties in good faith and in a spirit of cooperation to accomplish the purposes of this agreement as more specifically set forth herein. JBC and DFS agree that a primary goal of this Agreement is to provide services to children on the Reservation which are at least commensurate with services provided by the State of Wyoming to children outside of the Reservation.

(C) *Definitions.*

\* \* \* \* \* \*

9. "ICPA" means the Indian Child Protection Act of 1990, ...

10. "ICWA" means the Indian Child Welfare Act of 1978, ...

\* \* \* \* \* \*

16. "SATSS" means the program, office or agency established by the Tribes for the purpose of fulfilling their obligations under this Agreement.

17. "S & A LOC" means the Law and Order Code of the Shoshone and Arapaho Tribes of the Wind River Reservation, Wyoming.

\* \* \* \* \* \*

SECTION III. GENERAL RIGHTS AND OBLIGATIONS OF SATSS

(A) *Contract Services: Compliance with Family Services Manual.* SATSS shall deliver child protective services, crisis care services, youth and family services and probation supervision services as set forth in this Agreement. SATSS shall neither impose nor assign fees or charges of any kind upon recipients of contract services. In providing contract services SATSS shall comply with the rules and regulations contained in the Department's Family Services Manual. In the event that the Tribes adopt rules or regulations regarding or effecting contract services hereunder, SATSS shall comply with the same if both parties so agree in writing.

\* \* \* \* \* \*

(D) *Law, Policy and Procedure.* SATSS shall keep informed of and comply with all applicable Tribal, State and Federal laws and regulations in the performance of this Contract. Specifically, SATSS shall comply with Title III (Children's Code) of the S & A LOC with respect to all services provided under this Agreement. No child shall be removed from their home nor shall any child be maintained in a place other than their home through expenditure of funds

provided hereunder except pursuant to Title III of the S & A LOC. Legal proceedings instituted in Tribal Court pursuant to the provisions of this Agreement shall be governed by the S & A LOC. The parties further agree that Title III (Children's Code) of the S & A LOC shall govern all cases or other matters properly brought before the Shoshone and Arapaho Children's Court.

\* \* \* \* \* \*

15. Adhere to and ensure compliance with the DFS Family Services Manual not later than November 30, 1996. This includes use of all prescribed and required forms, to include case plans, case narratives, predisposition reports, social summaries, and comprehensive reports of child abuse/neglect investigations. The intention is not to attempt creation of work already accomplished, but to ensure work accomplished from the time of the Contract is completed according to Federal and State requirements.

\* \* \* \* \* \*

## SECTION IV. JURISDICTION AND SERVICE COVERAGE:

(A) *Tribal.* The Tribes shall provide child protective services, crisis care services, ... and youth and family services to children who are residents or domiciliaries of the Wind River Reservation, and to Indian children who reside off-reservation in Fremont and Hot Springs Counties.

(B) *State.* The Department shall provide child protective services, crisis care services, probation supervision services, and youth and family services to non-Indian children who are not residents or domiciliaries of the Wind River Reservation.

(C) *Cooperative Case Management.* The Tribes and State expect their respective staff members to conduct business in a mutually respectful manner that demonstrates a spirit of cooperation. Such coordination is especially important with regard to re-

moval of children, supervision of placement, required or appropriate notifications regarding emergency situations, and all court actions. SATSS and DFS may agree to accept or transfer responsibility for the delivery of services to particular children or families within their respective service areas.

\* \* \* \* \* \*

## SECTION V. CHILD PROTECTIVE AND CRISIS CARE SERVICES:

\* \* \* \* \* \*

(B) *Registry.* SATSS shall participate in the States' child neglect and abuse registry in accordance with the Department's rules or guidelines. SATSS shall have access to said registry or related information to the same extent it is available to County Offices of the Department.

\* \* \* \* \* \*

## SECTION IX. OTHER RIGHTS AND OBLIGATIONS OF THE PARTIES:

(A) *Grievances.* The parties acknowledge that persons aggrieved by SATSS actions shall have the right to appeal such actions/decision.

1. Grievances on the part of clients should first be heard and acted upon by the SATSS Director. In cases where resolution of grievance by the SATSS Director is unsatisfactory, a grievance panel consisting of designated JBC members, the DFS Region Manager, and the DFS Ombudsman shall convene to hear and resolve said grievance.

2. In cases where DFS and JBC are unable to resolve issues, an independent, mutually agreed upon individual shall be requested to serve as facilitator in the resolution process. Any costs incurred for procurement of a facilitator shall be equally shared by JBC and DFS.

\* \* \* \* \* \*

(E) SATSS Personnel. Unfilled contracted SATSS positions will be hired according to Tribal personnel policies and classification system, and will be supervised by the JBC. Copies of job descriptions will be provided by the JBC to both SATSS and DFS. The current Tribal employee policy and procedures shall apply to SATSS employees. Performance appraisals should be rendered according to SATSS staff progress in meeting Contractual and other JBC goals.

\* \* \* \* \* \*

SECTION X. MISCELLANEOUS

(A) *Independent Contractor.* SATSS shall function as an independent contractor for the purposes of this Contract, and shall not be considered an employee of the State of Wyoming for any purpose. . . . Nothing in this contract shall be interpreted as authorizing SATSS or its agents and/or employees to act as an agent or representative for or on behalf of the State of Wyoming or DFS, or to incur any obligation of any kind on the behalf of the State of Wyoming or DFS. . . .

\* \* \* \* \* \*

(D) *Sovereign Immunity.* The State of Wyoming, DFS, the Tribes and SATSS do not waive sovereign immunity by entering into this contract, and specifically retain immunity and all defenses available to them as sovereigns pursuant to . . . and all other applicable Tribal, Federal or State law.

Under the Agreement, DFS's rights and obligations are also enumerated. They include program evaluation, inspection of financial records, technical assistance, service innovations payment for contract services, reciprocal rights to financial information and records relevant to the Agreement.

In opposition to the Tribal defendants' Motion to Dismiss, plaintiffs advance the novel theory that because SATSS was created pursuant to the Tribal–State Agreement, SATSS is a "quasi-State of Wyoming" agency and its employees, defendants Lone Bear and Kennah, acted "under color of state law."

█ It is well settled that Indian Tribes have sovereign immunity from suit absent "either an explicit waiver of immunity or express authorization of the suit by Congress." *Ordinance 59 Ass'n,* 163 F.3d at 1153 (citing *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)). There is no contention in this case that immunity has been waived by the Tribes or that suit has been expressly authorized by Congress.

▪ █ The court finds and concludes that SATSS is, as alleged by plaintiffs, "an agency of the Shoshone and Arapaho Tribes." Complaint at ¶ 7. As an agency of the Tribes, it enjoys sovereign immunity from suit.

The court rejects plaintiffs' theory that such a Tribal agency became a "quasi-State" agency and thereby lost its sovereign immunity because of the Tribal–State Agreement or the adoption of DFS's Rules & Regulations pursuant to that Agreement.

The Agreement specifically provides that the Tribal Children's Code shall govern all proceedings in the Tribal Children's Court, clearly recognizes the jurisdiction of the Tribes and the Tribal Children's Court over Indian children living on the Wind River Reservation, provides that SATSS employees are to be hired and supervised by the Tribes in accordance with Tribal employee and policy procedures; provides for the eventuality of SATSS developing its own rules and regulations; and, provides that SATSS is an "independent contractor" and not an agent, representative or employee of the State. Significantly, the Agreement expressly states that it does not waive the Tribes' sovereign immunity. The provision that SATSS would adopt and comply with DFS's manual, forms and Rules & Regulations does not mean that SATSS became an agency of

the State of Wyoming any more than the Agreement's provision that SATSS shall be familiar with and comply with applicable federal law rendered SATSS a federal agency. Instead, as stated in the Agreement the provisions for adopting, following or using DFS's manual, forms and Rules & Regulations are meant to ensure that SATSS's work is in compliance with state and federal requirements. Agreement at § III(A).

▮ In accordance with ordinary contract construction principles, the specific controls over the general. Thus, the Agreement's provision that the Tribal Children's Code shall govern all cases or other matters properly brought before the Tribal Children's Court, including the removal of a child from his or her home, controls over the Agreement's provision that DFS's rules and regulations apply.

Further, assuming *arguendo* that the Agreement did require SATSS to apply substantive Wyoming law because it requires adoption of DFS's rules and regulations, it would not affect the sovereign immunity issue. For example, the Supreme Court has held in a taxation case: "To say substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit.... There is a difference between the right to demand compliance with state laws and the means available to enforce them." *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998) (citing *Oklahoma Tax Comm'n v. Citizens Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991)).

▮ Because defendant SATSS is a tribal agency and enjoys sovereign immunity from suit, the Complaint will be dismissed as to SATSS. To the extent that the Complaint seeks relief from defendants Kennah and Lone Bear as officials and employees of the Tribes, such relief would run against the Tribes themselves. In these circumstances, the Tribes' sovereign immunity protects the defendants in their official capacity. *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir.1997); *Evans v. McKay*, 869 F.2d 1341 n. 9 (9th Cir.1989). Accordingly, the Complaint will be dismissed as to defendants Kennah and Lone Bear in their official capacities.

Plaintiffs also contend that defendants Kennah and Lone Bear are named in their individual capacities. The Tribal defendants contend that the Complaint seeks to recover against defendants Kennah and Lone Bear only in their official capacities and that even if the Complaint is construed as naming them in their individual capacities, they acted under color of Tribal law and not "state law" as provided in 42 U.S.C. § 1983.

▮ In support of their contention that these defendants are named only in their official capacities, the Tribal defendants point out that the Complaint does not explicitly name Mr. Kennah and Mr. Lone Bear in their individual capacities and refers only to their actions in the course of their duties for a Tribal agency. Relying on Eighth Circuit case law, the Tribal defendants contend that if the complaint does not specifically name a defendant in his or her individual capacity, it is presumed the defendant is sued only in his or her official capacity. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir.1998). However, a different rules applies in this Circuit. In the Tenth Circuit "where the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability." *Pride v. Does*, 997 F.2d 712, 715 (10th Cir.1993). Thus, although the caption "may be informative" it is "clearly not dispositive." The Complaint in this case does not clearly indicate that defendants Kennah and Lone Bear are being sued in their individual capacities, although it does explicitly name another defendant (Lisa Cook–Gambler) in her individual capacity. Further, the

Complaint's allegations of the capacity in which a defendant was acting when the alleged deprivation of rights occurred, does not have to coincide with the capacity in which the defendant is sued. *Id.* 997 F.2d at 715 n. 2.

■ In this case the Complaint seeks punitive damages, a request which indicates the personal nature of the lawsuit. *Id.* 997 F.2d at 715 (citing *Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir.1988)). On balance, at this early stage of the case and considering the entirety of the pleadings filed herein, it appears that plaintiffs are suing defendants Kennah and Lone Bear in their official and individual capacities.

Defendants contend if they are sued in their individual capacities then Counts I and II of the Complaint, brought pursuant to 42 U.S.C. § 1983, must be dismissed because (1) plaintiffs do not allege the individual Tribal defendants acted under "color of state law" and (2) the facts as alleged in the Complaint show the individual Tribal defendants acted under color of tribal, and not state, law.

A review of the Complaint reveals that plaintiffs do make the conclusory allegation that all defendants acted under color of state law. Complaint at ¶ 85 (under color of State of Wyoming law). They also allege that defendants acted under "color of law", Complaint at ¶¶ 21 and 89, without specifying state or tribal law.

Although plaintiffs make the bare allegation that these defendants in their individual capacities acted "under color of state law," there are no factual allegation in support of that conclusory allegation. All of plaintiffs' nonconclusory factual allegations regarding these defendants reveal that they are alleged to have acted under authority of Tribal law. There is a complete lack of allegations of involvement of State of Wyoming Agencies or State of Wyoming officials or employees. Plaintiffs allege A.T.B. was identified as a suicide risk and possible victim of abuse of neglect by a counselor at a Bureau of Indian Affairs school at Wind River Reservation. The Complaint alleges that the Bureau of Indian Affairs (BIA) is a federal agency. Complaint at ¶ 6. The Complaint alleges A.T.B. was transported to the hospital by a BIA officer, at the direction of a BIA officer and that the transporting BIA officer was not qualified. The Complaint alleges that the BIA school counselor and principal acted improperly and refused E.F.W. information about her daughter. All of the officials that plaintiff E.F.W. allegedly contacted or who allegedly contacted her regarding her daughter's removal from school and hospitalization and the events relating to the abuse/neglect proceedings are Tribal officials and employees or are federal officials or employees or federal agencies,[1] with two exceptions: One, defendant Cook–Gambler, who is not alleged to be an employee or official of the State of Wyoming or and State agencies. And, two the unnamed non-parties who are alleged to have answered the phone at the Lander Valley hospital.

The pleadings of the neglect/abuse proceedings show the proceedings were conducted by SATSS and/or the Tribal Children's Court. This includes the voluntary Placement Agreement, Ex. 2 of the Complaint. Exhibit 2 is a preprinted form with the preprinted name of the State of Wyoming's Division of Family and Social Services's name crossed out and replaced with SATSS's name written in by hand.[2]

---

1. Plaintiffs allege that E.F.W. contacted FBI officials in an unsuccessful attempt to bring kidnaping charges against the BIA police department. Complaint ¶ 32. In addition the FBI contacted her about a subpoena for her daughter to appear before a federal Grand Jury. *Id.* at 33.

2. The ·Tribal–State Agreement was signed on behalf of the State of Wyoming and its Di-
rector of Family Services on November 5 and 6, 1996. However, it was not formally signed on behalf of the Shoshone and Northern Arapaho Joint Business Council until November 20, 1996. The preprinted form used for Ex. 2 which was altered by the handwritten changes in order to be used by SATSS, was signed on November 19, 1996. ·

■ It is well settled that a defendant's actions pursuant to Tribal authority are not "under color of state law" for the purposes of maintaining an individual capacity suit against that defendant under 42 U.S.C. § 1983. *Williams v. Board of County Commissioners of San Juan County*, 125 N.M. 445, 963 P.2d 522, 526 (1998); *McKinney v. State of Oklahoma, Department of Human Services, Shawnee, Okl.*, 925 F.2d 363, 365 (10th Cir.1991); *Evans v. McKay*, 869 F.2d at 1347. *See also Chapoose v. Hodel*, 831 F.2d 931, 934 (10th Cir.1987) (rejecting appellants' attempt to equate tribal action to state or territorial action for § 1983 purposes).

■ However, if an individual is possessed of state authority and acts under that authority, his or her actions may be considered under color of state law for purposes of § 1983. *Evans v. McKay*, 869 F.2d at 1347. Thus, where a plaintiff alleges that a defendant sued in his individual capacity acted in concert with state actors, such as the city police, whose actions were under "color of state law" such a plaintiff may state a claim against such a defendant under § 1983 even though the defendant was a tribal employee or official. *See Id.*, 869 F.2d at 1348 & n. 9 (Complaint alleged individual tribal defendants acted in concert with city police defendants whose actions were under "color of state law," and therefore the actions of the individual tribal defendants were not authorized under tribal law).

■ Here plaintiffs' allegations do not show that the individual Tribal defendants acted "in concert with" anybody who was acting under color of state law at the time of the actions at issue. The Complaint contains no allegations from which this court could find that plaintiffs stated a claim that the individual Tribal defendants acted under color of state law. Accordingly, Counts I and II will be dismissed as to the defendants Kennah and Lone Bear in their individual capacities.

■ Plaintiffs also bring a claim against defendants Lone Bear and Kennah based upon 42 U.S.C. § 1985 alleging conspiracy to deprive them of their "liberty interest to freely associate with family members and interfere with plaintiffs' due process rights guaranteed to them under the U.S. Constitution, as conferred to plaintiffs by the Indian Bill of Rights Act and as provided to plaintiffs ... by the Tribal Code." Complaint at ¶ 97.

The Tenth Circuit has explained a cause of action under § 1985 as follows:

The pertinent provision of § 1985(3) provides:

If two or more persons ... conspire ... for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [or] cause to be done any act in furtherance of the object of such conspiracy ... the party so injured or deprived may have an action for the recovery of damages ... The case law has defined the elements of a claim under this statute.

The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Griffin*, 403 U.S. at 102–03, 91 S.Ct. 1790 (1971). The evolving law has clarified these elements. Firstly, a valid claim must, of course, involve a conspiracy. Secondly, however, § 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 101–02, 91 S.Ct. 1790. The other "class-based animus" language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias. *United Bhd. of Carpenters & Joiners of America, Local 610, AFL—CIO v. Scott*, 463 U.S. 825, 837, 103 S.Ct. 3352, 77 L.Ed.2d 1049

(1983). In fact, the Supreme Court·has held that "it is a close question whether 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." Id. at 836, 103 S.Ct. 3352. Thirdly, and most importantly for this appeal, § 1985(3) covers only conspiracies "aimed at interfering with rights that are protected against private, as well as official, encroachment." Id. at 833, 103 S.Ct. 3352.

\*　　\*　　\*　　\*　　\*　　\*

In short, to state a claim under 42 U.S.C. § 1985(3) for a non-racially motivated private conspiracy, if indeed such a claim can be stated, it is necessary to plead, inter alia:

1.　that the conspiracy is motivated by a class-based invidiously discriminatory animus; and
2.　that the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official, encroachment.

Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir.1993) (citations partially omitted), cert. denied, 510 U.S. 1093, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994).

Section 1985(3) creates a cause of action against persons who conspire to deprive a person or class of "equal" protection or "equal" privileges and immunities. A violation of § 1985 must include class-based or racially discriminatory animus. Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Atkins v. Lanning, 556 F.2d 485, 489 (10th Cir.1977). "[I]n the absence of allegations of class based or racial discriminatory animus, the ·complaint fails to state a claim under § 1985." Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir.1979) (per curiam). Here, plaintiff has made no allegations of race or class-based animus. As such, he has not stated a claim under § 1985.

Bisbee v. Bey, 39 F.3d 1096, 1102 (10th Cir.1994) (citations partially omitted). .

In this case plaintiffs do not allege class based or racially discriminatory animus.

Accordingly, they have not stated a claim under § 1985.

 Finally, the court notes that plaintiffs' Complaint and other pleadings are not clear on their theory under which the. Indian Civil Rights Act (ICRA), 25 ·U.S.C. § 1302, provides. a basis for their claims against the Tribal defendants, or against any of the other ʾdefendants. See plaintiffs' Response at 6–15. The case they cite in support of their ICRA claims against the individual Tribal defendants, Means v. Wilson, 522 F.2d 833 (8th Cir.1975), was decided prior to Santa Clara, supra, and its ruling in regard to the ability to sue the Tribe or its governmental arms under the ICRA was impliedly overruled by Santa Clara's holding that the ICRA does not impliedly authorize actions for declaratory or injunctive relief against either the Tribe or its officers other than habeas relief. 436 U.S. at 71, 98 S.Ct. 1670. Further, as noted in Means the ICRA simply does not apply to individuals because the language of the ICRA, 25 U.S.C. § 1302, speaks only to Tribal action. Means, 522 F.2d at 840; Fletcher, 116 F.3d at 1324 n. 12. In Means, the Eighth Circuit also held that individual Indians were not immune from suit under the federal civil rights statute, 42 U.S.C. § 1985(3), but that the plaintiff adequately alleged a claim under that statute only against three of the individual defendants. The former is the same conclusion this court reached above: Tribal sovereign immunity does not extend to claims against individual Indians under the federal civil rights statutes for such persons sued in their individual capacity. However, for the reasons stated, in this case plaintiffs have failed to allege claims under 42 U.S.C. §§ 1983 and 1985(3) against defendants Kennan and Lone Bear in their individual capacities.

It is therefore

ORDERED that defendants SATSS's, Kennah's and Lone Bear's Motion to Dismiss is GRANTED. It is further

ORDERED that the Complaint is DISMISSED as to defendant Shoshone and Arapaho Tribal Social Services (SATSS), defendant Thomas S. Kennah, and defendant Darrell L. Lone Bear, Sr. It is further

ORDERED that plaintiffs' Motion Pursuant to Fed.R.Civ.P. 56(f) is DENIED.